# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| **TATONKA CAPITAL CORPORATION, a** | ) | |
| **Colorado corporation,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **1:14-CV-03017-TCB** |
| | ) | |
| **MOSAICA EDUCATION, INC., a Delaware** | ) | |
| **corporation, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## TATONKA'S FURTHER EVIDENCE AND REPLY BRIEF IN SUPPORT OF MOTION FOR THE APPOINTMENT OF RECEIVER

**COMES NOW,** Tatonka Capital Corporation ("Tatonka"), and hereby files this *Further Evidence and Reply Brief in Support of Tatonka's Motion for the Appointment of Receiver* (this "Further Evidence").[1]  This Further Evidence is being filed to provide additional support for Tatonka's Motion for the Appointment of Receiver (the "Motion for Receiver") [DE 2] against defendants Mosaica Education, Inc. ("MEI"), and the wholly-owned subsidiaries of MEI named in the Complaint (together with MEI, the "Defendants").  In support of this Further

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint or Motion for Receiver.

Evidence, Tatonka relies on its pleadings of record and the Affidavit of Tatonka principal Carol S. Hansen in support of this Further Evidence (the "Hansen Affidavit").  Tatonka shows the Court as follows:

## SUMMARY

Defendants' Response to Motion for Appointment of Receiver is an attempt to shift the focus away from key facts.  MEI does not dispute that it is in covenant and payment default on more than $20 million in senior, secured, and *fully matured debt* owed to Tatonka.  Further, MEI has admitted that since late May 2014, it has not paid approximately $1 million in the federal employer and employee trust fund taxes to the IRS.  MEI's default under the various loan documents between the parties necessitates the appointment of a receiver at law.  Two of the remedies available to Tatonka are receivership--both contractual and equitable.  In the event that a receiver at law is not warranted purely based on MEI's default, the balance of the equities, including the non-payment of payroll taxes, strongly support the appointment of a receiver.

The harshest remedy available to Tatonka is not, as the Defendants allege, the appointment of a receiver.  It is foreclosure.  Tatonka seeks the less harsh remedy of receivership instead of foreclosure in order to better serve the public good.  To foreclose, Tatonka would notify all of MEI's account debtors to make

2

their payments directly to Tatonka.  MEI would then have no cash to pay teachers and the schools would close immediately.  If the relief sought is not granted, then Tatonka would be forced to seek this remedy, however harsh, to protect its interest. Against this backdrop, Tatonka seeks the more moderate remedy of the appointment of a receiver to keep the schools operational while the financial issues of MEI and its wholly-owned subsidiaries are resolved.

## STATEMENT OF FACTS

MEI has not been paying its federal payroll tax obligations, including the employee trust portion, to the Internal Revenue Service ("IRS").  Hansen Aff., ¶58. MEI first became delinquent on the employee and employer portion of the payroll taxes beginning around May 2014.  Hansen Aff., ¶59.  This failure to pay its ongoing tax obligations continued in subsequent pay periods.  Hansen Aff., ¶59.

MEI recently admitted to Carol Hansen that MEI's unpaid IRS unemployment tax obligations were approximately $1 million.  Hansen Aff., ¶60. To the best of Tatonka's knowledge, MEI has not cured this delinquency.  Hansen Aff., ¶60.  At some point, the IRS may take enforcement action.  Hansen Aff., ¶60.

On Friday, August 1, 2014, Tatonka and MEI were in the process of negotiating a potential global resolution between the two parties in the form of a forbearance agreement.  Hansen Aff., ¶61.  A MEI executive mentioned that MEI

was concerned that Tatonka might set off funds from a deposit account which Tatonka controlled.  Hansen Aff., ¶61.  On Monday, August 4, 2014, Tatonka notified MEI that it was setting off the funds in that account against the outstanding indebtedness owed to Tatonka.  Hansen Aff., ¶61.  For the first time, MEI mentioned that it needed the funds in that account to pay its IRS payroll tax obligations.  Hansen Aff., ¶61.  The wiring instructions sent by MEI were to an account with MEI.  Hansen Aff., ¶61.

In August 2014, MEI secretly intercepted communications from Tatonka to schools managed by MEI.  Hansen Aff., ¶62.  On August 12, 2014, Tatonka sent letters to five schools whose notes and accounts receivable were assigned by MEI to Tatonka in April 2014 (the "Transferred Collateral").  Hansen Aff., ¶62.  These letters notified the schools that Tatonka was the holder of the right to the promissory notes and accounts receivable and that they should direct payment directly to Tatonka instead of through MEI.  Hansen Aff., ¶62.  Tatonka addressed those letters to the chairs of the school boards.  Hansen Aff., ¶62.  However, the board members are part-time volunteers so the letters were received at the schools by MEI employees who improperly diverted the same.  Hansen Aff., ¶62.

On August 19, 2014, Tatonka discovered that Gene Eidelman intercepted the letters so that members of the schools' governing boards and other non-MEI

personnel would not receive the letters and would remain unaware of their contents and direction.  Hansen Aff., ¶63.  MEI's prior counsel and Mr. Eidelman both confirmed Mr. Eidelman's scheme and accomplishment of intercepting the letters to the school boards.  Hansen Aff., ¶63.

Notwithstanding Mr. Eidelman's nefarious efforts, Tatonka successfully delivered letters to some of the schools on August 14, 2014.  Hansen Aff., ¶__.  Tatonka made demand, by letter dated August 19, 2014, that MEI immediately deliver the letters to the intended recipients – the governing boards of the five schools.  Hansen Aff., ¶64.

According to MEI's prior counsel, Mr. Eidelman asserted his actions were not nefarious but were done with good intentions.  Hansen Aff., ¶65.  Seeing through this ethically opaque façade, it is clear that the interception of the letters and the attempt to keep the school boards uninformed demonstrate, at a minimum, questionable ethics, volatility of MEI's current management as well as the precarious nature and the imminent devaluation of the business.  Hansen Aff., ¶65.  The act and intention of the interception is made even more dubious based upon the fact that, at this same time, MEI was negotiating a workout with a bank that involved compromising on a debt MEI previously assigned to Tatonka.  Hansen Aff., ¶65.  Had that school board been aware of this gross misrepresentation, it

may or may not have agreed to negotiations with MEI, but at the very least the school's obligations to pay Tatonka would have been considered in that agreement. Hansen Aff., ¶65.  MEI hid this information from the school's governing board and other capital provider.  Hansen Aff., ¶65.

After filing the Complaint, Tatonka learned, through Michael Connelly, that some of the schools' receivables assigned to Tatonka in April 2014 were also assigned to another lender.  Hansen Aff., ¶66.  Tatonka did not learn of this double pledging until after the filing of its Complaint and this egregious fact urges for the appointment of a Receiver to manage MEI and its subsidiaries.  Hansen Aff., ¶66.

MEI has assigned various receivables and notes to Tatonka.  Hansen Aff., ¶67.  The face amount of those obligations exceeds $10 million, but the obligations are all substantially past due, in default, of doubtful collectability and, as recently discovered, there is uncertainty as to whether any of the notes and/or receivables have already been improperly pledged to another entity.  Hansen Aff., ¶67.

MEI also complains that it was due monies from a transaction with the Fell Charter School (the "Fell Transaction").  Hansen Aff., ¶68.  In February 2014, MEI assigned notes and accounts receivable from the Fell Charter School to Tatonka. Hansen Aff., ¶68.  Pursuant to that certain Assignment and Agreement dated February 11, 2014, "in exchange for Assignee agreeing not to foreclose on the Fell

AR and the Fell Notes, Assignor has agreed to transfer all of its rights, title and interest in such to the Assignee." Hansen Aff., ¶68. Tatonka sued the Fell Charter School for the amounts due and settled with the school. Hansen Aff., ¶68. Tatonka chose to share some of the proceeds with MEI, approximately $400,000, but MEI was not entitled to any of the proceeds. Hansen Aff., ¶68.

Tatonka made a decision at the time of filing the Complaint not to publicly address MEI's unpaid taxes and the remainder of the facts discussed in this Further Evidence because Tatonka did not want to overly concern MEI's students, teachers, and other interested parties. Hansen Aff., ¶69. This concept was shared with Defendants' counsel prior to the filing of Defendants' Response to Motion for Appointment of Receiver (the "Response"). Hansen Aff., ¶69. However, the Response touched on these concerning issues and has required Tatonka to respond in order to make sure that this Court is aware of all relevant facts. Hansen Aff., ¶69.

MEI asserts that Tatonka has "delayed" filing this Receivership petition for two and a half months. Hansen Aff., ¶70. Indeed Tatonka has not rushed to file. Hansen Aff., ¶70. Negotiations have been intense and ongoing since December 2013 when the Forbearance Agreement expired. Hansen Aff., ¶70. When the last note matured on July 1, 2014, Tatonka made a final effort to come to a payment

arrangement with MEI.  Hansen Aff., ¶70.  When those negotiations failed, Tatonka filed this lawsuit.  Hansen Aff., ¶70.

## ARGUMENT

The Defendants seek to confuse the straightforward relief to which Plaintiff is entitled, appointment of a receiver, and which the teachers and students alike would benefit.  While the majority of the defenses proposed by the Defendants were answered in the Motion for Receiver, Plaintiff wishes to clarify some points advanced in the Response.

### A.   PLAINTIFF'S CLAIM IS CERTAIN ENOUGH TO WARRANT APPOINTMENT OF RECEIVER.

Defendants argue that Tatonka's claim is uncertain and in dispute.  [DE 23] at 6.  Specifically, Defendants argue that they have satisfied their monetary obligations under the Loans because they assigned the Transferred Collateral to Tatonka in April 2014 as additional collateral for the Loans.  [DE 23] at 6-7.  Without providing any authority for their argument, Defendants argue that a set off equal to the estimated value of the Transferred Collateral should be applied to and subtracted from the outstanding balance of the Loans.  [DE 23] at 7.  Defendants' arguments fail for numerous reasons.

First, the Assignments upon which Defendants rely specifically govern the effect of the Assignments on the Loans, and provide that the Assignments do not satisfy the debt.  Specifically, the Assignments state in part as follows:

> (f) **No action of [Tatonka] under this Assignment** or any future lending on the part of [Tatonka] or otherwise **shall act to release Assignor or any of the Guarantors from any obligations to [Tatonka] with respect to any of the Indebtedness and the Loan Documents**, and all of said obligations are hereby ratified and affirmed the same as if repeated on this date, and the Assignor and Guarantors acknowledge that no defenses or offsets exist with respect to the obligations and Indebtedness.  Assignor and Guarantors ratify and confirm that all terms and conditions of the Loan Documents remain in full force and effect and constitute the legal, valid and binding obligations of the Assignor and Guarantors enforceable against such parties in accordance with the terms stated herein.

> (g) Except as specifically provided for in subsection (h) immediately below, **neither the execution and delivery of this Assignment, nor the performance of the terms hereof or any future lending on behalf of [Tatonka] to Assignor and/or any of the Guarantors, shall (i) constitute a novation, payment, or satisfaction of all or any portion of the Indebtedness or the Loan Documents, or (ii) waive, limit or impair any right or remedy under the Loan Documents executed in connection with the Indebtedness**, including without limitation any right or remedy related to any past, present and/or future default by Assignor and/or any of the Guarantors.  Anything herein to the contrary notwithstanding, this Assignment shall not be construed as a limitation or release of the rights and remedies that [Tatonka] has under applicable laws or the loan documents heretofore executed by Assignor and Guarantors with respect to [Tatonka].

> **(h) In no way is [Tatonka]'s acceptance of the assignment hereunder a full and final satisfaction of the Indebtedness. <u>If and</u> <u>when</u> [Tatonka] is paid any amount . . . under [this Assignment], [Tatonka] in its sole and absolute discretion, shall apply such amounts against any of the amounts outstanding under the Indebtedness as [Tatonka] shall choose**, after [Tatonka] has reimbursed itself for its costs associated with such collection efforts, including, without limitation, the costs of reasonable attorney's fees.

[DE 4-38 through 4-47]. Thus, the Assignments themselves establish: (i) that the Assignments did not release Defendants from their liability under the Loan Documents, (ii) that the Assignments did not constitute a novation, payment, or satisfaction of any portion of the Loans, and (iii) when Tatonka receives funds from the Transferred Collateral, Tatonka in its discretion shall apply such amounts against any of the amounts outstanding under the Loans. Defendants' arguments that the unrealized value of the Transferred Collateral should be applied to the balance of the Loans before any funds are actually received from the Transferred Collateral and/or that the Assignments satisfied the Loans are wholly contrary to the agreed-upon terms of the Assignment and should be disregarded.

Second, Defendants' arguments are contrary to standard practice under the law which values not the nominal amount of an assignment but the actual value realized upon such instruments assigned. See *Keller Industries, Inc. v. Holden*, 514 F.2d 1269, 1270 (5th Cir. 1975) (holding that assigned accounts receivable

only reduces indebtedness to extent it is actually collected); *Borden v. Pope Jeep-Eagle, Inc.*, 200 Ga. App. 176, 181 (1991) (recognizing that a creditor applies the value of collateral to the outstanding debt after the creditor realizes the value of the collateral); *Gibson v. Central Nat. Bank of McKinney*, 171 F.2d 398 (5th Cir. 1948) (applying value of collateral to outstanding debt after sale and realization of collateral); *Southeast Timberlands, Inc. v. Haiseal Timber, Inc.*, 224 Ga. App. 98 (1996) (recognizing that in obtaining a deficiency judgment, the value of the collateral is applied to and subtracted from the debt when the collateral is realized from a sale of the mortgaged property).  Accordingly, Defendants' arguments that the Assignments somehow satisfied the Loans and/or that the value of the unrealized collateral should be subtracted from the Loans balances before Tatonka has received any funds from the unrealized collateral are meritless.  The assignments of the Transferred Collateral in no way satisfied the Loans and the estimated value of the Transferred Collateral cannot be deducted from the balances of the Loans before realization.  Even if there is a dispute over the exact amount owed on the Loans (which Tatonka denies), such a dispute should not stop the Court from appointing a receiver.

**B.   TATONKA IS ENTITLED TO THE APPOINTMENT OF A RECEIVER BASED ON ITS CONTRACTUAL REMEDIES.**

Despite the Defendants' protestations, Tatonka is entitled to the appointment of a receiver based on its contractual remedies in addition to this Court's equitable powers.   Some courts have considered advance consent to appointment of a receiver as *dispositive* on the issue. *See U.S. Bank, Nat. Ass'n v. CB Settle Inn Ltd. Partnership*, 827 F.Supp.2d 993, 998 (S.D.Iowa 2011) (finding "no reason not to enforce the terms for which the parties bargained"); *Federal Nat. Mortg. Ass'n v. Maple Creek Gardens, LLC*, 2010 WL 374033, *3 (E.D.Mich. Jan. 25, 2010) (agreement "to the appointment of a receiver upon its [mortgage] default alone is sufficient to conclude that [lender] is entitled to [appointment]"); *Britton v. Green*, 325 F.2d 377, 382 (10th Cir. 1963) (holding that mortgagee entitled to appointment where parties had agreed to same in mortgage), *Am. Bank and Trust Co. v. Bond Intern. Ltd.*, 2006 WL 2385309, *7 (N.D.Okla. Aug.17, 2006) ("[Plaintiff] is entitled to the appointment of a receiver under the bargained-for provisions of the parties' agreements."); *Fed. Home Loan Mortgage Corp. v. Nazar*, 100 B.R. 555, 558 (Bankr.D.Kan. 1989) ("In interpreting the receivership provisions of the HUD mortgages, courts have found default alone to warrant appointment of a receiver."). Even those courts which do not find advance consent as dispositive have considered such consent to be a major factor which the court considers and held

that it "*commands great weight*" in determining whether to appoint a receiver. *Sterling Sav. Bank v. Citadel Dev. Co., Inc.*, 656 F.Supp.2d 1248, 1260 (D.Or. 2009) (consent is a factor that "commands great weight"); *California Bank & Trust v. Shilo Inn*, 2012 WL 1883474 (D.Idaho May 22, 2012) (applying *Sterling*'s view of consent).

Here, the Loans are in default, at a minimum, by expiration of the maturity dates therein.  At no point have the Defendants disputed the fact that maturity dates for all the Loans passed no later than July 1, 2014.  Of course, this position is in addition to the default based upon the occurrence of the Forbearance Termination Date which occurred no later than December 5, 2013.  Notwithstanding the same, the Defendants somehow seek to confuse this Court by referring to some "alleged default" in their Response.  [DE 23] at 23.[2]

---

[2] The Defendants' Response cites *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367 (S.D.N.Y. 2007) and *Comerica Bank v. State Petroleum Distributors, Inc.*, 2008 WL 2550553 (M.D. Pa. June 2, 2008) which are inapposite and distinguishable from the case *sub judice* and actually reinforce Plaintiff's requested relief as proper.  In *Fortress*, the operative issue is the ability to appoint the receiver *ex parte* pursuant to a contractual agreement.  *Fortress* at 371.  That case is about notice, which is not a concern here, and the *Fortress* court merely ordered the movant to resubmit the application as an order to show cause on notice to defendant.  *Id*. at 372.  In *Comerica*, the court points out that the grant in the underlying security deed which reads that the movant may "[p]ersonally or by agents, attorneys, or appointment of a receiver, enter any premises where Collateral may there be located, and take possession of all or any of it" is insufficient to allow for the appointment of a receiver.  *Comerica* at *4-13.  The

As previously noted, the various loan agreements provided that:

> Tatonka at its election may (but shall not be obligated to), without notice, do any one or more of the following:
>
> …
>
> (d) exercise any and all rights and remedies afforded by this Agreement or any Facility Loan Documents, or under law, equity or otherwise, **including obtaining appointment of a receiver**.

(emphasis added) [DE 2] at ¶42.  Moreover, in section 2(b) of the Forbearance Agreement, the Defendants agreed and acknowledged that:

> 2.      Acknowledgement.      Borrowers and Guarantors, **jointly and severally, hereby acknowledge and agree as follows:**
>
> (b)     In addition to other defaults by Borrower and Guarantors that currently exist under the Loan Documents, by virtue of the Specified Events, Borrower and Guarantors currently are in default under the Loan Documents, and such default is continuing notwithstanding Lender entering into this Agreement. In light of such continuing default, as well as other continuing defaults by Borrower and Guarantors under the Loan Documents, **Lender has the right to exercise any and all remedies available to it** thereunder notwithstanding Lender continuing into this Agreement

---

Court in *Comerica* focuses on the language in the underlying security agreement and finds it wanting since it fails to evidence "that the parties agreed to appoint a receiver in the event of default". *Id*. At 12.  Of course, in the case *sub judice*, the language is clear and unambiguous that Tatonka can elect to appoint a receiver unlike the poorly drafted language in *Comerica* which merely suggests that *if* a receiver was appointed *then* such receiver would be able to enter the premises.

> and/or making future loans to Borrower and/or any of the Guarantors.

(emphasis added) [DE 83] at 2.  The issue before this Court is not merely the contractual inclusion of a right to receivership in an ordinary lending relationship, which Tatonka asserts is sufficiently bargained for to allow for the dispositive granting of a receiver upon the inclusion of such language, but it is the step further, as part of the required consideration given by the defaulting Defendants in order to coerce Tatonka to enter into the Forbearance Agreement, of acknowledging and agreeing that the Lender has the right to exercise any and all remedies available to it which includes the appointment of a receiver.  Here, to the extent that the original loan documents were insufficient to dispositively grant the appointment of a receiver (which Tatonka does not concede), the Defendants have already waived, pursuant to the terms of the Forbearance Agreement, any opposition to the Lender's exercise of its remedy to appoint a receiver.

## CONCLUSION

For the reasons set forth above, this Court should grant the Plaintiff's Motion for Appointment of Receiver.

Dated this 14th day of October, 2014.

s/Graham H. Stieglitz

Graham H. Stieglitz

Georgia  Bar No. 682047

Michael L. Hall (PHV)

Attorney for Plaintiff

TATONKA CAPITAL

CORPORATION

**OF COUNSEL:**

BURR & FORMAN LLP
171 Seventeenth Street, N.W., Suite 1100
Atlanta, Georgia  30363
(404) 815-3000
Email:  gstiegli@burr.com
        mhall@burr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on October 14, 2014:

Gary W. Marsh
Nathan Garroway
Jeff Zachman
McKenna Long & Aldridge LLP
303 Peachtree Street, NE
Suite 5300
Atlanta, GA 30308
(404) 527-4000
gmarsh@mckennalong.com
ngarroway@mckennalong.com
jzachman@mckennalong.com

                                        s/Graham H. Stieglitz
                                        Graham H. Stieglitz