IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL CORPORATION, a Colorado corporation, | ) ) ) | |
|     Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| MOSAICA EDUCATION, INC., a Delaware corporation; MICHIGAN EDUCATIONAL FACILITIES, LLC, a Delaware limited liability company; ASI TEXAS, LLC, a Delaware limited liability company; EFA COMPANY, LLC, a Michigan limited liability company; LORAIN-LEAVITT PROPERTIES, LLC, a Georgia limited liability company; WARREN-ELM FACILITIES, LLC, a Georgia limited liability company; and COLUMBUS-MORSE PROPERTIES, LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. 1:14-CV-03017-TCB |
|     Defendants. | ) ) ) | |

## AMENDED ORDER APPOINTING RECEIVER

In October 2014, the Court granted the motion for appointment of

receiver (the "Motion") filed by Plaintiff Tatonka Capital Corporation

("Tatonka" or "Plaintiff") against Defendants Mosaica Education, Inc.

("MEI" or "Mosaica") and certain of its wholly owned subsidiaries (the "Subsidiaries," or collectively with MEI, "Defendants" or the "Companies"). On April 22, 2015, this matter came before the Court on the motion [92] to clarify or amend order appointing receiver. The motion is hereby granted in part and denied in part, and the Court's October 21, 2014 Order [28] is hereby amended and superseded as follows:

The Court, after notice and an evidentiary hearing, having considered the pertinent pleadings, evidence, and argument of counsel, finds that the appointment of a receiver continues to be appropriate and the Motion is due to be granted as set forth herein.

The Court finds that the appointment of a receiver for the assets and business operations of all of the Companies is proper and for good cause shown, both as a legal remedy based on contract and an equitable remedy based on the facts shown. The receiver's specific duties, rights, and obligations are set forth below. **The receiver's paramount duties are to provide appropriate and quality educational services at the schools operated by the Companies and to preserve, protect,**

**and enhance the value of the Companies. Therefore, the receiver shall do its best to retain the vast majority of the present employees so as to maintain confidence and continuity. All other duties are subordinate to these primary duties.**

1. To the extent the Receiver is obligated to deliver notices, reports, budgets, requests, and other information to Tatonka by the terms of this Order, the Receiver shall also contemporaneously deliver such papers to CXA Corporation ("CXA") and to Defendants' counsel, if Defendants have separate counsel, otherwise such papers shall be delivered directly to Defendants at the following address: Mosaica Education, Inc., 3400 Peachtree Road, Suite 550, Atlanta, GA 30326. The Receiver is under no obligation to deliver any such papers to the Defendants' shareholders unless otherwise ordered by the Court. During the pendency of this receivership, Defendants' shareholders are granted standing on behalf of the Companies solely for the purpose of asserting and prosecuting defenses and claims against Tatonka in this instant lawsuit at their own expense unless the Receiver, in its sole discretion, advances funds to the shareholders for such purposes, but

3

without prejudice to any right the shareholders might have to seek reimbursement of any expenses related thereto. The Receiver is also authorized, but not required, to file an answer or other papers in this lawsuit. In the event that the Receiver and the Defendants' shareholders file conflicting answers or other papers in this lawsuit, the Court shall determine any standing conflicts at that time. The deadline to respond to Tatonka's complaint shall be extended to May 3, , 2015 unless further ordered by the Court.

2. GGG Partners, LLC, by and through its Managing Partner Katie S. Goodman, is hereby appointed receiver ("Receiver") of all of the Companies' assets and operations, including all real property, personal property, mixed property, and all stock and ownership interests held by MEI in its various subsidiaries, along with associated voting rights (the "Property"). Receiver is not an attorney for or related to any party to this action.

3. The Property includes, without limitation, all of the Companies' assets, including management of charter schools, as well as all books and records related to the assets and business, accounts

receivable reports, reports, revenues and proceeds of all assets, surety and performance bonds, letters of credit, security deposits, tax deposits, operations, performance deposits, escrow deposits, deposit accounts, keys, access codes and cards, books, records, accounts, bank accounts, checkbooks, ledgers, accounts payable and accounts receivable records, leases, reports, insurance policies and certificates, executory contracts, leasehold interests, plans, specifications, drawings, surveys, technical manuals for all systems, together with operating procedures, passwords, security codes, warranties, records required to be kept under applicable safety, health care, and environmental laws, licenses, permits, rights related to any state, federal, and local education agencies and authorities, all tax benefits and rights, proffers, entitlements, trademarks, service marks, trade names, intellectual property rights (including but not limited to the Paragon© curriculum), claims, causes of action, choses in action and in general all other information, data, instruments, documents, rights, properties or assets of any kind or character whatsoever (whether tangible or intangible and whether real, personal or mixed) forming a part of or related to the

5

ownership, development, use, operation and/or management of any and all of the Companies' assets, including any and all assets that Receiver needs to perform Receiver's duties.

4. Subject to control of this Court and the laws regarding receivership, Receiver is authorized, pursuant to this Order, to do any and all acts necessary for the proper and lawful conduct of the receivership. Specifically, the following orders are entered:

a. **Receiver's Exclusive and Complete Control over the Property and the Companies.** Receiver is authorized to take and have complete and exclusive control and possession of the Property and the Companies. Receiver is vested with all of the Property including the books, records, files, data, and information of the Companies. Subject to the control of this Court and the other provisions of this Order, Receiver is authorized to execute any documents and take any actions it deems necessary or appropriate in its own name or in the name of the Companies in furtherance of its duties as receiver.

6

b. **Bank Accounts**. Without any further action from the boards of the Companies, this Order authorizes Receiver to take control of existing bank accounts and to open any new bank accounts, and further authorizes Receiver to add and remove any existing signatories of any bank accounts. Receiver shall also be entitled to copies of any historical bank records of the Companies.

c. **Companies' Actions**. Until further order of the Court, any and all of the Companies and any persons acting under their direction or in concert with them are: (1) directed to deliver the Property to Receiver or as otherwise directed by Receiver; (2) enjoined from disturbing the Receiver's use and possession of the Property or other property that is the subject of this Order in any way; (3) prohibited and restrained from disposing of, dissipating, mishandling, or misappropriating any of the Property or other property that is the subject of this Order; (4) prohibited from taking any actions that would, directly or indirectly, have an adverse impact on the value of the Property; (5) prohibited and restrained from canceling, reducing or modifying any and all

7

insurance coverage in existence with respect to the Property; and (6) prohibited and restrained from collecting any sums due to the Companies;

d. **Receiver's Right to Prevent Waste of, and to Preserve and/or Enhance the Property**. Effective immediately, Receiver is directed to take any and all actions Receiver deems commercially reasonable and appropriate to keep operating the schools, provide services to the schools, to prevent waste to the Property, to preserve, secure, manage, maintain, safeguard, and enhance the Property and all other forms of property to which Receiver is entitled to take possession and control under this Order, and may, where appropriate in the exercise of its business judgment, take actions to enhance education services, and the value of the Property. Receiver shall take reasonable actions to ensure that it complies with all laws applicable to the possession, use, occupancy, management, operation, and maintenance of the Property as provided under any and all laws and regulations;

8

e. **Budget**. Beginning in December 2014, on or before the fifteenth (15th) day in the month, and on or before the same day of every month thereafter until the receivership created by this Order is terminated, Receiver shall use its best efforts to furnish to Defendants, Tatonka, and CXA a detailed, projected, monthly operating budget for the fiscal year for Receiver and the Property (as may be amended from time to time, the "Budget"). Tatonka, CXA, and Defendants shall advise Receiver in writing within ten (10) days after receipt of the Budget, or any amendment thereof, whether Tatonka, CXA, or Defendants disapproves of the Budget, or any amendment thereof. If Receiver, Defendants, CXA, and Tatonka are unable to resolve any dispute concerning the Budget, any party may petition the Court for a hearing to resolve such dispute; provided, however, that (subject to paragraph 4.k below) the Receiver is authorized, but not required, to make any payments under the Budget unless otherwise ordered by the Court.

f. **Receiver's Right to Manage, Maintain, and Operate the Companies and the Property**. Receiver is authorized to manage and operate the Companies and the Property, including, at Receiver's sole discretion, appointing the Receiver as the sole director, officer, member, board member, and manager, as applicable, of each of the Companies and all of their wholly owned direct or indirect subsidiaries; provided, however, that the failure of the Receiver to appoint itself as director, officer, member, board member or manager shall not affect Receiver's authority to manage and control the Companies and the Property as otherwise set forth herein.. Receiver is further authorized accept new students into the various operated schools, and to employ and pay such teachers, education professionals and workers, contractors, brokers, accountants, attorneys, and other persons and professionals as Receiver may in its sound business judgment deem necessary or appropriate in the management, conduct, control, or custody of the affairs of Companies and the Property. Receiver is further authorized, but not required, in its sole

10

discretion, to make payments and disbursements in the ordinary course of business, to make such payments and disbursements as may be necessary and proper for the preservation, maintenance, security, and enhancement of the Property, and to make such other payments and disbursements as may be ordered by the Court. Receiver may, but shall not be required to, perform under any contract or lease entered into prior to the date on which it assumes possession of the Property. Prior to taking any action previously authorized in this subparagraph, Receiver shall obtain any such approvals and/or consents that Companies would be required to obtain under applicable laws and regulations prior to taking any such action;

g. **Receiver Authorized to Market and Sell the Property**. Receiver is authorized to market and sell pieces of the Property (as determined by the Receiver in its sole discretion) where the value of the individual asset is less than $50,000. The sale of any individual assets having a value in excess of $50,000 may be approved only on the prior permission of the Court, after notice

11

and right to be heard to any applicable school authority directly affected by the proposed sale, Defendants (at the address referenced in paragraph 1 above, or to their separate counsel, if any), and to Tatonka, CXA, and any other creditor or party in interest requesting notice in writing and served on the Receiver. The Court will look with disfavor on any proposed sale of any operating school that would result in the closing of the school, particularly during the school year. Nonetheless, if such operation is creating financial instability, then the Court might permit such closure. Subject to such notice and approval, Receiver is authorized to sell all or a portion of the Property and other collateral, and execute on Defendants' behalf any necessary documents in connection with such sale and/or assumption and to apply any sale proceeds as specified in any applicable order approving such sale. To the extent not otherwise satisfied, all liens, claims, interests, and encumbrances on any Property sold shall attach to any and all proceeds of such sale in the priority they now attach to the Property;

12

h. **Receiver's Right to Collect Amounts Due**. Receiver is authorized to receive and collect any and all sums due or owing to Companies in any manner related to the Property, whether the same are now due or shall hereafter become due and owing, to deposit such sums into an account established and maintained by Receiver, and to expend such sums on the operation and management of the Property in the ordinary course of its business. All persons in possession of the Property or any portion thereof are hereby directed to attorn to Receiver, and until further order of this Court are hereby: (i) directed to pay over to Receiver or its duly designated agent all rents, revenues, proceeds, or other sums payable with respect to the Property which are now due and unpaid or hereafter become due, and (ii) enjoined and restrained from paying to Companies or their agents, officers, directors, employees, or attorneys any such rents, revenues, proceeds, or other sums;

i. **Disputes and Legal Actions Related to the Property and the Companies**. Subject to the provisions of Paragraph 1,

13

Receiver is authorized to litigate, investigate, negotiate, and compromise for the Companies any and all disputes related to the Property or to the Companies. The Receiver can do so in its own name or in the name of the Companies. Nothing contained herein is intended to limit the right of the Companies' shareholders to, on their own and at their own expense, appear in and contest any and all aspects of this instant lawsuit in this Court; provided, however, that the shareholders may not interfere with the Receiver's rights and duties specified in this Order.

j. **Insurance**. Receiver is authorized to maintain appropriate property insurance for the Property and Companies, public liability insurance, worker's compensation insurance, fire and extended coverage insurance, malpractice, health care, burglary and theft insurance, and other types of insurance normally obtained in connection with the operation and management of the Property and Companies, and is authorized to continue any current policies in place and to purchase further insurance as Receiver deems appropriate;

14

k. **Payment of Taxes; Preparation and Filing of Tax Returns for the Property**. Receiver is authorized to (i) pay all current and past due taxes, and any other taxes and any other governmental assessments against the Property, and (ii) prepare and file tax returns with respect to the Property, and other property subject hereto, as may be required by law. Receiver is authorized to negotiate with the Internal Revenue Service and other taxing authorities concerning any past due taxes that the Companies may owe and, in connection therewith, Receiver may execute a power of attorney on behalf of the Companies authorizing Receiver to conduct such negotiations. However, other than as set forth both in a budget and in any payment plan approved by both the IRS and the Receiver, no payment of past due employment taxes may be made without express Court approval.

l. **Receiver's Right to Borrow Money.** In the event Receiver determines in its sole business judgment that Companies need more cash in order to adequately maintain the operations of the

Property, Receiver is hereby authorized to borrow such funds and expenses as may be necessary to pay such costs and expenses on ordinary business terms as Receiver may negotiate and agree. However, such loan can prime the lien position of any Tatonka or CXA lien only upon either its consent or upon Court approval after due notice, a hearing, and a Court determination that such loan is in the best interest of the receivership estate with due regard for the rights of all, particularly any secured creditor being primed (the "Receivership Loan"). The Receivership Loan shall bear interest at a reasonable rate, with such lien primed only by the unpaid fees and expenses of Receiver, subject to the rights of secured creditors as provided above. However, no personal recourse shall be had against Receiver with respect to the Receivership Loan, and any lender to the Receiver shall look solely to the Property and Companies' assets to satisfy any Receivership Loan;

m. **Payment of Utilities; Maintenance of the Property.** Receiver is authorized to: (1) negotiate and enter into new agreements, and

16

contracts in the ordinary course of the business of the Property; (2) modify existing agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses, and other obligations secured by the Property or which may give rise to liens on the Property, and all other outstanding obligations to suppliers and service providers to the Companies for goods and services provided in the ordinary course of business as set forth in subsection (p) herein; and (4) make repairs necessary to the maintenance of the Property in the ordinary course of business in order to preserve the Property;

n. **Application of Income from the Property**. Receiver shall apply income from the Property as set forth elsewhere herein and, subject to the lien rights of secured creditors, as follows to the extent cash is available: (1) Receiver's approved fees and expenses; (2) the current operating expenses of the receivership in the ordinary course of the business and receiver's professionals; (3) payment of budgeted amounts for past due federal employment taxes as agreed upon in a tax payment plan by and between the

17

Receiver, solely in its capacity as Receiver for the Property, on the one hand, and the Internal Revenue Service, on the other hand (the "Tax Plan"); (4) to a reserve account of $500,000 to cover upcoming expenses; (5) to the extent funds remain after payment of the foregoing items, distribution to creditors in such priority, order, and amount as the Court determines is just and proper. Unless and until a Tax Plan is effectuated, the Receiver shall not make any payments on account of subparts (4) or (5) above. If and when the Tax Plan is effectuated, the Receiver shall apply income from the Property as set forth in subparts (1) through (5) above. Receiver is permitted to maintain sufficient cash on hand to enable Receiver to meet those expenses. Proceeds from the sale or other disposition of Property shall not constitute "income" from such Property for purposes of this paragraph.

o. **Accounting**. Beginning in December 2014, on or before the 15th day of each month, Receiver shall make an accounting of all revenues collected and all fees and expenses paid for the previous month and shall file said accounting with the Court and shall

serve upon Tatonka's counsel, CXA's counsel, and Defendants' counsel, a copy of said accounting, and also to all other parties who appear in this proceeding and who request notice. Receiver shall file a final report within sixty (60) days after the termination of the receivership's operations;

p. **Payment of Expenses Incurred in Running the Business After the Receiver is Appointed**. Receiver is permitted to pay all expenses incurred on or after the date Receiver is appointed in the normal and ordinary course of business of the Property. To the extent the income from the Property is not sufficient to pay the expenses of operating the business, Receiver may seek a Receivership Loan as set forth above. All fees and expenses of Receiver shall constitute a first lien and charge against the Property, with priority ahead of all other liens and security interests, including without limitation the liens and security interests of secured lenders and all other creditors. The Receiver shall not be obligated to pay any expenses incurred with regard to the Property or the operations of the Companies prior to Receiver

taking possession of the Property, nor shall Receiver be required to use any revenues in payment of such expenses. **The Receiver shall pay salaries and wages of all employees incurred prior to the beginning of the Receivership in the ordinary course of Companies' business within the month immediately preceding the Receiver's appointment and the employment taxes due in connection with these payrolls.** Receiver may, in Receiver's sole and absolute discretion, pay other expenses that were incurred in the normal and ordinary course of business of the Property and that were incurred prior to Receiver taking possession of the Property if, and only if, the payment of any such pre-receivership expenses or ongoing payments in long term contracts is necessary and essential to the ongoing operation of the Companies (e.g., utilities, leases, executory contracts, and mortgages). It shall be incumbent upon Receiver, in Receiver's sole and absolute discretion, to make a determination as to which expenses, if any, incurred prior to the Receiver's taking possession of the Property were incurred in the normal and ordinary course

of business and the payment of which is necessary and essential to the ongoing operation of the Companies. Receiver's determination of such is binding on the parties hereto. The Receiver may in its reasonable discretion pay past due and ongoing lease and mortgage payments, and may also renegotiate same in its reasonable discretion;

q. **Right to File Bankruptcy Petition.** Receiver and/or Defendants are empowered to file a bankruptcy petition under any Chapter of the United States Bankruptcy Code for each and all of the Companies.

r. **Compliance with Laws.** Receiver shall take reasonable actions to ensure that it complies with all laws and regulations, particularly those applicable to education companies and schools. All governmental agencies shall deal with the Receiver, or Receiver's designee, as the sole representative of the Companies;

s. **Receiver's Liability**. Except in the event of gross negligence, willful misconduct, or actions in violation of orders of the Court, Receiver (and its representatives, employees, agents and

professionals) shall have no personal liability for any obligations incurred in the course of the receivership, any and all such liabilities being limited to the assets (including the cash and cash equivalents) received and generated by Receiver in the course of the receivership, subject to the existing lien of secured creditors. Receiver shall have no liability with respect to taxes incurred prior to the receivership. Pre-receivership taxes may be paid from proceeds of the sale of the Companies' assets in accordance with the priority owed to such taxes. Tatonka will hold Receiver harmless except in connection with any willful misconduct or gross negligence by Receiver; and

t. **Receiver's Authority**. The authority granted to Receiver is self-executing.

u. **Payment of Secured Debt**. Unless otherwise ordered by the Court, the Receiver shall, after payment of any applicable property taxes, obligations to the Receiver specified in paragraph 6.e. herein, and costs and expenses necessary to close the sale of any Property, pay the net proceeds from any such sale to satisfy

all or a portion of any undisputed liens on or security interests in such Property in their order of priority. If any interested party files a written objection to the proposed allocation of net proceeds from any sale at least five (5) business days prior to the closing (or as may otherwise be agreed to by the Receiver), the Receiver shall segregate the net proceeds from the sale pending a further Order of the Court. No payments to a secured creditor from the proceeds of that creditor's collateral shall constitute a violation of 31 U.S.C. § 3713.[1]

v. **Receiver to Maintain Separate Accounts and Records**. To the extent reasonably practicable, the Receiver shall maintain separate accounts and records for each of the Companies and,

---

[1] 31 U.S.C. § 3713 provides:

(a) (1) A claim of the United States Government shall be paid first when --
    (A) a person indebted to the Government is insolvent and --
        (i) the debtor without enough property to pay all debts makes a voluntary assignment of property;
        (ii) property of the debtor, if absent, is attached; or
        (iii) an act of bankruptcy is committed; or
    (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
  (2) This subsection does not apply to a case under title 11.
(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

Case law provides that the government's priority claim is subject to "definite" liens, in which the identity of the lienor, the amount of the lien, and the property to which the lien attaches are known. See Illinois ex rel. Gordon v. Campbell, 329 U.S. 362 (1946).

unless otherwise authorized by the Court, shall use its best efforts to insure that no assets, income, or proceeds from sales of any assets of one of the Companies are comingled or combined with the assets, income, or proceeds from sales of any assets of other of the Companies.

5. Receiver's appointment is effective immediately upon entry of this Order, and Receiver shall be authorized, subject to control of this Court, to do any and all of the above acts necessary to the proper and lawful conduct of the receivership, provided that within fourteen (14) days of the date hereof, Receiver shall post a bond in the amount of $5,000,000.00 (Five million dollars) conditioned upon its performance of its duties as set forth herein. The cost of this bond shall be borne exclusively by Tatonka subject to further orders of this Court.

6. To ensure the orderly operation of the receivership and maximize the value of the assets, Receiver's proposed fee arrangment as set forth in the Motion for Receiver is approved, and Receiver shall be compensated as follows:

a. Receiver shall be paid a fee based on the hourly rates of its internal professionals, not exceeding $350 per hour. Receiver and its supporting staff shall be reimbursed for all reasonable out-of-pocket expenses, including travel expenses, reasonably incurred in the discharge of its rights and duties as Receiver, and any professional fees and expenses incurred by outside professionals retained by Receiver in its sole discretion, all of which shall be deemed to be "expenses" of Receiver under this Court;

b. Receiver shall be entitled to retain such professionals, including attorneys, investment bankers and brokers, on such terms and conditions as Receivers deems necessary in connection with the performance of Receiver's duties hereunder, and may provide reasonable retainers to such professionals to secure their services without seeking separate approval of the Court. Receiver and Receiver's retained professionals shall prepare periodic statements of services rendered and time expended during the course of

25

the receivership. Those periodic statements shall be filed with the Court and made available to the parties in this litigation unless such statements are *de minimis* (i.e., under $2000) or are standard real estate broker commissions in connection with the sale of real estate, in which case they may be paid in full by the Receiver upon receipt as an ordinary administrative expense;

c. Unless a party files a written motion objecting to the payment of a periodic Receiver's invoice within fourteen (14) calendar days of filing of the invoice, Receiver is authorized to pay: (i) fifty percent (50%) of Receiver's fees, (ii) ninety percent (90%) of any retained professional's fees, and (iii) one-hundred percent (100%) of expenses in the invoice. In the event that a written objection to the payment of the invoice is timely made with Receiver and the Court, the objection should be set for hearing by the objecting party as soon as practicable;

d. If a timely objection is filed, then until an order is entered concerning the objection is entered, Receiver shall be authorized to pay only forty percent (40%) of the fees stated in the invoice at issue and shall hold back payment of the rest;

e. In the event of a sale of operating assets to a purchaser other than a secured creditor or its affiliate, Receiver shall be paid the remaining balance of its fees and any expenses plus a success fee of 2.0% of the gross proceeds subject to notice and a right to be heard by Defendants;

f. In the event of a sale of operating assets to a secured creditor or its affiliates, Receiver shall be paid the remaining balance of its fees and any expenses plus a success fee of 0.5% of the gross proceeds subject to notice and a right to be heard by Defendants; and

g. Upon the sale of operating assets or other resolution of the receivership, the remaining balance of the fees owed to

Receiver and its professionals shall be paid prior to the final report or dismissal of the receivership.

7.     Receiver will     provide periodic updates to the Court apprising the Court of the status of the Receiver's efforts to sell the Property.   As soon as reasonably practicable, the Receiver shall file under seal an inventory of all assets of the Defendants, their affiliates, or their subsidiaries that the Receiver has taken into its possession and shall provide such inventory to any party in interest upon request; provided, however, that the Receiver makes no representations as to the realizable value of any such assets.

8.     Because of the large size of this multi-state receivership, the ten (10) day period for filing companion proceedings in other districts contained in 28 U.S.C. § 754 is extended to sixty (60) days.

9.     Receiver may, in its sole and absolute discretion, resign its office as Receiver by providing not less than thirty (30) days written notice to counsel for Tatonka and the Companies, and by filing such notice with this Court.

10. The liability of Receiver and its professionals, agents, representatives, employees, affiliates, successors, and assigns, for any and all claims, liabilities, damages, fees, costs, expenses, and charges incurred or arising from their respective acts or omissions in connection with Defendants, this Order, the receivership established pursuant to this Order, and/or the Property, shall exist only to the extent that this Court determines by a final and non-appealable judgment that such acts or omissions resulted solely from such person's bad faith or gross negligence. Any such liability shall be paid as an expense of the receivership when and as incurred. This provision shall survive the termination or resignation of Receiver, and the termination or suspension of the receivership.

11. In order to promote judicial economy, all persons, partnerships, firms, corporations, and entities are hereby enjoined from proceeding to place an involuntary lien upon or levy upon or from otherwise interfering with Receiver's exclusive possession of the Property or its carrying out of any duty under this Order including the cancellation of any executory contracts, licenses, or other rights held by

any of the Companies during the pendency of this receivership, unless such person first obtains prior permission from this Court. Any interested party may appear and pursue in this court any claim it may have against any of the Companies, including seeking to remove its collateral or other assets from the Receiver's control, cancelling executory contracts, leases, insurance and the like. Such persons need not intervene as a party to have their rights fully heard and adjudicated.

12.   All third parties (including but not limited to financial institutions) in possession of any Property subject to this Order are hereby ordered to turn over such assets to Receiver within seven (7) business days of receipt of a copy of this Order.

IT IS SO ORDERED this 28th day of April, 2015.

_____
HON. TIMOTHY C. BATTEN, SR.
UNITED STATES DISTRICT JUDGE

30