EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL CORPORATION, a Colorado corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 1:14-CV-03017-TCB |
| MOSAICA EDUCATION, INC., a Delaware corporation; etc, et al, | ) ) ) ) | |
| Defendants. | ) | |

### CAROL S. HANSEN'S SPEAKING AFFIDAVIT

**State of Colorado**    )

**County of Denver**    )

Personally appeared before me Carol S. Hansen, who is known to me, and who before me swore the following facts:

1. My name is Carol S. Hansen. I am the CEO of Tatonka Capital Corporation.

2. All statements in this affidavit are based either on my personal knowledge or from the expressly referenced authenticated exhibits.

23800587 v1

3. Tatonka has a perfected security interest in all or substantially all of Mosaica's operating assets. There are numerous documents that support this conclusion, including: Exhibit 22 which is the security agreement issued by Mosaica in favor of Tatonka; Exhibit 16 which is the Revolver Loan Tatonka made to Mosaica; Exhibits 6, 10, 14, 23, and 31 whereby Mosaica guaranteed to Tatonka the debts of its own subsidiaries; and Exhibit 82 which contains some of the filed Financing Statements in Delaware (including a Continuation Statement) perfecting Tatonka's security interest in Mosaica's personal property assets.

4. If Tatonka were not perfected in some personal property asset, the value of such assets (in which Tatonka might not be perfected) is less than $1.5 million. Tatonka is willing to leave $1.5 million of sales proceeds behind as a carve out to pay the next in-line creditor, presumably the IRS. Tatonka is clearly entitled to the remainder of the sales proceeds.

5. Mosaica owes Tatonka various indebtedness in the following seven different loans, each amount being secured by Tatonka's perfected lien.

    i. Exhibit 204 establishes the amount due on the Revolver is $7,743,841.46 as of April 30, 2015.

ii. Exhibit 261 establishes the amount due from EFA Company, LLC (and guaranteed by Mosaica in Exhibit 10) as of March 31, 2015 totals $4,358,157.55.

iii. Exhibit 262 establishes the amount due from Warren-Elm Facilities, LLC (and guaranteed by Mosaica in Exhibit 31) as of March 31, 2015 totals $2,508,776.54.

iv. Exhibit 263 establishes the amount due from Michigan Educational Facilities, LLC (and guaranteed by Mosaica in Exhibit 6) as of March 31, 2015 totals $3,258,565.79.

v. Exhibit 264 establishes the amount due from Mosaica on the so-called STAR indebtedness as of March 31, 2015 totals $43,465.68.

vi. Exhibit 265 establishes the amount due from Lorain-Leavitt Properties, LLC (and guaranteed by Mosaica in Exhibit 14) as of March 31, 2015 totals $453,222.25.

vii. Exhibit 205 establishes the amount due from Columbus-Morse Properties, LLC (and guaranteed by Mosaica in Exhibit 10) as of March 31, 2015 totals $4,321,579.80. Exhibit 47 establishes that Columbus-Morse Properties, LLC ("CMP") guaranteed Mosaica's indebtedness to Tatonka.

    viii.    Pursuant to many Exhibits, Mosaica also owes Tatonka its attorney fees for seeking to enforce Mosaica's defaulted obligations held by Tatonka. From June 1, 2014 through March 31, 2015, the amount of attorneys' fees incurred by Tatonka and billed by Burr & Forman LLP seeking to enforce Tatonka's rights against Mosaica is $728,745 plus expenses in the amount $12,749.

    ix.    Interest and attorneys' fees continue to accrue. Tatonka also holds cash credits in the amount of $439,070.81 which are a credit against these amounts due[1].

    x.    Thus, the total amount due from Mosaica to Tatonka (exclusive of accruing charges after the dates stated above) is $22,990,032.26.

6. On several occasions Mosaica and its subsidiaries executed releases of any and all claims any of them might have against Tatonka. Paragraph 3(e) of Exhibit 266 dated February 11, 2015 and Exhibits 267, 268, 269, 271 and 272 all dated April 11, 2014 (all also at paragraph 3(e)) appear to contain the most recent release of Tatonka by Mosaica.

---

[1] The total of credits includes $275,000 from Midland, $75,000 from a GWB account, and $89,070.81 (payments on AR from CPA and CATA).

7.  In my view, Tatonka is Entitled to be Paid at Closing all of the "Further Proceeds" from the Sale of the CMP Real Property. There are four separate and independent reasons why Tatonka is entitled to be paid all of the Further Proceeds from the sale of CMP Real Property.

8.  First, the Buyer of the CMP real property is willing to purchase the real property only if it is occupied by a school ("CHATA") with an appropriate long term lease for a certain payment amount. CHATA's existing lease is expiring. CHATA is unwilling to continue to lease the premises unless certain of its conditions are met, particularly that the amount of its other indebtedness was substantially reduced. Among CHATA's other indebtedness is approximately $4.8 million initially owed to Mosaica for various extensions of credit, which indebtedness Mosaica has assigned to Tatonka, which falls outside this Receivership action.

9.  Tatonka has agreed to reassign this $4.8 million indebtedness to the Receiver so that the Receiver can declare it satisfied to meet CHATA's condition, *provided* Tatonka receive at closing all of the net sales proceeds on the CMP sale, including the Further Proceeds. CHATA will then execute the lease and Pansophic will purchase the CMP real property. Thus, Tatonka is providing new substantial consideration to make this sales transaction occur.

10. Second, all CMP does is hold real property. CMP appears to have only two creditors. One is the taxing authority for Franklin County, Ohio where the school is located. All of these taxes will be paid at closing. CMP's only remaining creditor will be Tatonka. Thus, Tatonka is the only creditor in line to be paid.

11. Third, the indebtedness owed by CMP to Tatonka is based on CMP's guarantee of Mosaica's obligations to Tatonka. CMP received at least five types of consideration which I contend support CMP's guaranty of Mosaica's indebtedness. First, Mosaica from time to time paid CMP's payments due Tatonka under the CMP 2011 Loan Agreement. Second, CHATA was able to make its lease payments to CMP only by virtue of Mosaica's extension of credit to CHATA, which would not have been possible without Tatonka's financing of Mosaica. Third, Mosaica paid $950,000 of lease payments to CMP on CHATA's behalf, which would not have been possible without Tatonka's financing of Mosaica. Fourth, based largely on information supported by Mosaica, Mosaica spent its own funds to improve the CHATA building owned by CMP, which would not have been possible without Tatonka's financing of Mosaica. Exhibits 37, 209, 210 and 270. Fifth, Mosaica on April 13, 2011 executed a Guaranty Agreement in favor of Tatonka in which Mosaica cross guaranteed CMP's obligations to Tatonka under the CMP 2011 Loan Agreement. Exhibit 23.

12. I am told CXA somehow contends that the 2011 transaction terminated CMP's guaranty. It did not. Also, in September 2013 CMP signed Exhibit 83 which confirms the continuing existence of the CMP's guaranty.

13. Further, Exhibit 24 secures the guaranty indebtedness that CMP owes to Tatonka. CXA contends that the loan advances made to Mosaica after the execution of the CMP 2011 Mortgage (Exhibit 24) are not secured by the Mortgage. That is not how the Mortgage reads, but even if it did, when the Mortgage was executed, Mosaica already owed Tatonka $2.2 Million on the Revolver. Thereafter the amount owed by Mosaica to Tatonka under the Revolver has never been less than $2.2 million. Exhibit 204.

14. CMP's sole member manager is Mosaica. Exhibit 257. CMP's profits from the sale of the real property would be paid to its owner Mosaica. When those profits arrived at Mosaica, I am told that they would be classified as either general intangibles or investment property. Various security agreements granted by Mosaica state that Tatonka's security interest applies to Mosaica's "investment property" and "general intangibles". Exhibit 16 and 24.

15. Tatonka's obligations under the various loans were straight forward and very specific; to advance funds to Mosaica or its subsidiaries as described in the agreements. Mosaica and its subsidiaries' obligations to Tatonka were also

specific and clearly defined; make payments as agreed. Tatonka met the obligations of those agreements. Mosaica and its subsidiaries, at the direction of its CEO/President/CFO and Head of Education, who also served in capacity as Board Members and majority owners of the common stock, abandoned their obligation to pay their creditors while at the same time paying themselves and spending their employees' Federal Withholding Taxes dollars. The completion of the proposed sale and the distribution of the sale's proceeds to its secured and unsecured creditors will bring an appropriate conclusion to the legal process afforded Tatonka as Lender. It will in-turn, strengthen the underlying schools by allowing fresh management and capital to carry on with the task of providing educational services, which was at the forefront of Tatonka's legal process.

_____
Carol S. Hansen, Affiant

Sworn to before me, this 29th day of April, 2015.

_____
(Notary's official signature)

My commission expires: 2/5/17        [Notary Seal]

ERIC BLAMEY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20094004363
MY COMMISSION EXPIRES 02/05/2017