# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| TATONKA CAPITAL CORPORATION, a Colorado corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| MOSAICA EDUCATION, INC., a Delaware corporation; MICHIGAN EDUCATIONAL FACILITIES, LLC, a Delaware limited liability company; ASI TEXAS, LLC, a Delaware limited liability company; EFA COMPANY, LLC, a Michigan limited liability company; LORAIN-LEAVITT PROPERTIES, LLC, a Georgia limited liability company; WARREN-ELM FACILITIES, LLC, a Georgia limited liability company; and COLUMBUS-MORSE PROPERTIES, LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. 1:14-CV-03017-TCB |
| Defendants. | ) |

## TATONKA'S AMENDED AND REPLACEMENT[1] CONDITIONAL SUPPORT FOR THE PROPOSED RECEIVER'S SALE INCLUDING TATONKA'S REQUEST FOR PAYMENT OF SUBSTANTIALLY ALL OF THE NET SALES PROCEEDS AT CLOSING

---

[1] This pleading amends and replaces Tatonka's filing found at Docket No. 162 filed on April 29, 2015 by clarifying (i) that Tatonka doesn't assert an interest in the Harrisburg, PA property (but does in the Highland Park, MI property notwithstanding the misstatement in Docket No. 162 otherwise), (ii) the status of the Lorain-Levitt and Fairburn real property sales, and (iii) the additional consideration given by Tatonka by its agreement of assigning accounts receivable to MEI with a face amount in excess of ten million dollars to assist the proposed sale.

23907917 v2

## SUMMARY OF POSITION

Tatonka holds the paramount lien on virtually all of the assets the Receiver proposes to sell to Pansophic including (A) the "Operating Assets" of Mosaica and (B) the Real Property of certain subsidiaries. Tatonka is entitled to be paid all of the net proceeds of all sales (other than three of the real property sales) at closing. Nonetheless, Tatonka is willing to allow a portion of these sales proceeds (the "Carve Out") to be used to pay both (A) Receiver's professionals (Receiver, Receiver's attorney, investment banker, and brokers) and (B) back employment taxes presumably due the IRS. Tatonka supports all sales on the condition it receives all of the net proceeds at closing except for the Carve Out.

## INTRODUCTION

COMES NOW Tatonka Capital Corporation ("Tatonka") and hereby files this Amended and Replacement Conditional Support for the Receiver's Proposed Sale to Pansophic Learning US LLC ("Pansophic") of the Operating Assets of Mosaica and the Real Property[2] owned by its subsidiaries. [Docket No. 145]. Tatonka requests that this Court condition any sale upon the Receiver paying to Tatonka at closing all of the net proceeds due Tatonka based on its perfected liens, other than the Carve Out.

---

[2] Tatonka recognizes that other creditors hold the first mortgage on both the Youngstown, Ohio, Harrisburg, Pennsylvania, and Jackson, Michigan properties. Tatonka makes no claim to the proceeds of those real property sales.

Tatonka recognizes and agrees that the Trustee's professionals (Receiver, Receiver's attorney, investment banker, real estate brokers, and the like) are due to be paid ahead of Tatonka. Even though Tatonka's interest in these proceeds is entirely superior to that of the IRS (which has never filed a lien), Tatonka is willing for the Receiver to hold back from the sales proceeds an amount sufficient to satisfy the IRS, which can be used to pay the IRS or whomever else the court determines is entitled to those proceeds.

This pleading is supported by both (1) Tatonka's Further Evidentiary Submission and (2) Carol Hansen's Speaking Affidavit which were filed with this Court on April 29, 2015 at Docket #163 and Docket #162-1, respectively.

## FACTS

### I.     The Sale of Mosaica's Operating Assets.

#### a.     The Merits of the Sale of the Operating Assets.

The Receiver has conducted a fair and appropriate sales process to achieve the highest bid available for these assets in a relatively short period of time, particularly given that Mosaica is running out of cash. The Receiver has done a fine job. The sale itself is good for the estate.

#### b.     Tatonka has the first and paramount lien.

Authenticated exhibits filed contemporaneously with the Complaint establish that Tatonka has a perfected security interest in all of Mosaica's operating assets. There are numerous documents that support this conclusion: Exhibit 22

which is the security agreement issued by Mosaica in favor of Tatonka; Exhibit 16 which is the Revolver Loan Tatonka made to Mosaica; Exhibits 6, 10, 14, 23, and 31 whereby Mosaica guaranteed to Tatonka the debts of its own subsidiaries; Exhibit 82 which contains some of the filed Financing Statements in Delaware (including a Continuation Statement) perfecting Tatonka's security interest in these assets.

If Tatonka were not perfected in some assets, the value of the assets (in which Tatonka might not be perfected) is less than $1.5 million. Tatonka is willing to leave $1.5 million of sales proceeds behind as a Carve Out to pay the next in-line creditor, presumably the IRS. Tatonka is clearly entitled to the remainder of the sales proceeds other than the Carve Out.

    **c.**    **The amount of indebtedness owed by Mosaica.**

Mosaica owes Tatonka various indebtedness in seven different loans, each amount being secured by Tatonka's perfected liens.

    i.    Exhibit 204 establishes the amount due from Mosaica on the Revolver is $7,743,841.46 as of April 30, 2015.

    ii.    Exhibit 261 establishes the amount due from defendant EFA Company, LLC ("EFA") (and guaranteed by Mosaica in Exhibit 10) as of March 31, 2015 totals $4,358,157.55.

iii. Exhibit 262 establishes the amount due from defendant Warren-Elm Facilities, LLC ("Warren-Elm") (and guaranteed by Mosaica in Exhibit 31) as of March 31, 2015 totals $2,508,776.54.

iv. Exhibit 263 establishes the amount due from Michigan Educational Facilities, LLC ("MEF") (and guaranteed by Mosaica in Exhibit 6) as of March 31, 2015 totals $3,258,565.79.

v. Exhibit 264 establishes the amount due from Mosaica on the STAR Loan Agreement as of March 31, 2015 totals $43,465.68.

vi. Exhibit 265 establishes the amount due from defendant Lorain-Leavitt Properties, LLC ("L-LP") (and guaranteed by Mosaica in Exhibit 14) as of March 31, 2015 totals $453,222.25.

vii. Exhibit 205 establishes the amount due from defendant Columbus-Morse Properties, LLC ("CMP") (and guaranteed by Mosaica in Exhibit 10) as of March 31, 2015 totals $4,321,579.80. Exhibit 47 establishes that CMP guaranteed Mosaica's indebtedness to Tatonka.

  viii. Mosaica also owes Tatonka its attorney fees for seeking to enforce Mosaica's defaulted obligations held by Tatonka. From June 1, 2014 through March 31, 2015, the amount of attorneys' fees due is $728,745 plus expenses in the amount $12,749.

  ix. Interest and attorneys' fees continue to accrue. Tatonka also holds cash credits in the amount of $439,070.81 which are a credit against these amounts due[3].

Thus, the total amount due from Mosaica to Tatonka (exclusive of accruing charges after the dates stated above) is $22,990,032.26.

  **d.** **Mosaica's Releases of Tatonka.**

No party as of yet asserted any kind of counter-claim or claim against Tatonka. Nonetheless, on several occasions Mosaica executed releases of any and all claims it might have against Tatonka. Paragraph 3(e) of Exhibit 266, dated February 11, 2014 and of Exhibits 267, 268, 269, 271 and 272 all dated April 11, 2014, appear to contain the most recent release of Tatonka by Mosaica.

---

[3] The total of credits includes $275,000 from Midland, $75,000 from a GWB account, and $89,070.81 (payments on AR from CPA and CATA).

e.  **The Past Due Taxes Owed the IRS**.

The Internal Revenue Service has not filed a tax lien against Mosaica. Mosaica generally failed to pay its employment taxes of approximately $1.5 million for the second and third quarters of 2014.  Even if the IRS filed a tax lien, the IRS's lien priority would remain behind Tatonka's lien in all respects, except perhaps for receivables and inventory created more than 45 days after the IRS filed its lien. Nonetheless, as stated above, Tatonka is willing to carve out from its fair share of the proceeds an amount sufficient to cover the IRS taxes (assuming the total is around $1.5 million).

II.  **The Sales of Subsidiaries' Real Property.**

a.  **Prior orders concerning the sale of real property.**

This Court previously approved the sale of certain real property owned by the subsidiaries, and allowed the Receiver to pay at closing the sales proceeds to the paramount lienholder, with one exception.  The Court ruled that Tatonka is entitled to the first $4,434,261.72 of the net sales proceeds of the CMP Real Property but has not yet ruled on whether "Further Proceeds" of approximately $1.6 million are due to be paid to Tatonka at Closing.  Those prior orders are not subject to challenge.

b.  **The Warren-Elm Real Property Sale**

There was no prior motion or order concerning the Warren-Elm real property sale because there was then no known buyer. Now, the current sale

motion before the Court proposes to sell the Warren-Elm real property to Pansophic for $2,000,000. Warren-Elm owes Tatonka $2,508,776.54, which amount is secured by this real property. Exhibit 32 is Tatonka's first mortgage on this Warren-Elm real property. Thus, Tatonka is entitled to be paid at closing all of the net sales proceeds of this sale, with the shortfall covered by Mosaica's secured guaranty.

### c.     The Lorain-Leavitt Real Property Sale

There was no prior motion or order concerning the Lorain-Leavitt real property sale because there was then no known buyer. Now, the current sale motion before the Court proposes to sell the Lorain-Leavitt real property to Pansophic for $155,000. Lorain-Leavitt owes Tatonka $453,222.25, which amount is secured by this real property. Exhibit 13 is Tatonka's first mortgage on this Lorain-Leavitt real property. Thus, Tatonka is entitled to be paid at closing all of the net sales proceeds of this sale, with the shortfall covered by Mosaica's secured guaranty.

### d.     The Fairburn Real Property Sale

There was no prior motion or order concerning the Fairburn real property sale because there was then no known buyer. Now, the current sale motion before the Court proposes to sell the Fairburn real property to Pansophic for $340,000. Mosaica Education, Inc. owes Tatonka $22,990,032.26, which amount is secured by this real property. Attached hereto as Exhibit "A" is a copy of Tatonka's first

mortgage on this Fairburn property marked with Exhibit #273. Thus, Tatonka is entitled to be paid at closing all of the net sales proceeds of this sale.

### III. Tatonka is Entitled to be Paid at Closing all of the "Further Proceeds" from the Sale of the CMP Real Property.

There are four separate and independent reasons why Tatonka is entitled to be paid all of the Further Proceeds from the sale of CMP Real Property.

#### a. Tatonka is providing new consideration.

The Buyer of the CMP real property is willing to purchase that property only if it is occupied by a school ("CHATA") with an appropriate long term lease for a certain payment amount. CHATA's existing lease is expiring. CHATA is unwilling to continue to lease the premises unless certain of its conditions are met, particularly that the amount of its other indebtedness was substantially reduced. Among CHATA's other indebtedness is approximately $4.8 million initially owed to Mosaica for various extensions of credit, which indebtedness Mosaica assigned to Tatonka in April 2014.

Tatonka has agreed to reassign this $4.8 million indebtedness to the Receiver so that the Receiver can declare it satisfied to meet CHATA's condition, *provided* Tatonka receive at closing all of the net sales proceeds on the CMP sale, including the Further Proceeds. CHATA will then execute the lease and Pansophic will purchase the CMP real property. Thus, Tatonka is entitled to the Further

Proceeds based solely on this new substantial consideration. There are other additional reasons why Tatonka is also entitled to the Further Proceeds at closing.

### b. Tatonka is entitled to the Further Proceeds because it is the only Creditor of CMP.

All CMP does is hold real property. CMP appears to have only two creditors. One is the taxing authority for Franklin County, Ohio where the school is located. All of these taxes will be paid at closing. CMP's only remaining creditor will be Tatonka. If Tatonka is CMP's only creditor, then it is entitled to all of the proceeds up to the amount of the indebtedness CMP owes it.

This indebtedness owed by CMP to Tatonka is based on CMP's guarantee of Mosaica's obligations to Tatonka. CMP received at least five types of consideration to support its guaranty. First, Mosaica from time to time paid CMP's payments due Tatonka under the CMP 2011 Loan Agreement. Second, CHATA was able to make its lease payments to CMP only by virtue of Mosaica's extension of credit to CHATA, which would not have been possible without Tatonka's financing of Mosaica. Third, Mosaica paid $950,000 of lease payments to CMP on CHATA's behalf. Fourth, Mosaica spent its own funds to improve the CHATA building owned by CMP, which would not have been possible without Tatonka's financing. Exhibits 37, 209, 210 and 270. Fifth, Mosaica on April 13, 2011 executed a Guaranty Agreement in favor of Tatonka in which Mosaica cross

guaranteed CMP's obligations to Tatonka under the CMP 2011 Loan Agreement. Exhibit 23.

      **c.    Tatonka is Also Entitled to the Further Proceeds because CMP's Guaranty is secured by a mortgage.**

Exhibit 24 secures the guaranty indebtedness that CMP owes to Tatonka. CXA contends that the loan advances made to Mosaica after the execution of the CMP 2011 Mortgage are not secured by the Mortgage. That is not what the Mortgage says, but even if it did so provide, the transaction documents reflect that when the Mortgage was executed, the amount owed by Mosaica to Tatonka under the Revolver was approximately $2.2 million. Thereafter the amount owed by Mosaica to Tatonka under the Revolver has never been less than approximately $2.2 million. Exhibit 204. So, it is of no consequence here if the mortgage did not secure future advances made on the guaranty.

      **d.    Tatonka is also entitled to all of the Further Proceeds based on its Blanket Security interest in substantially all of Mosaica's personal property assets.**

CMP's sole member manager is Mosaica. Exhibit 257. CMP's "profits" would be up-streamed to Mosaica. When those profits arrived at Mosaica, they would be classified as either general intangibles or investment property. Either way, Tatonka's interest in those general intangibles and investment property is perfected by filing its financing statement against Mosaica. Exhibit 82. Various

security agreements granted by Mosaica expressly grant Tatonka a security interest in Mosaica's investment property and general intangibles.  Exhibit 16 and 24.

### IV. Tatonka is Contributing New Value in Excess of $10,000,000 in the Form of Accounts Receivable.

Multiple schools owed Mosaica for various extensions of credit, which indebtedness Mosaica subsequently assigned to Tatonka.  Tatonka has agreed reassign this more than $10,000,000 indebtedness to the Receiver so that the Receiver can declare such indebtedness satisfied to get various schools' support to execute leases which will incentivize Pansophic to complete the purchase. Tatonka's agreement to reassign this indebtedness to Receiver is based upon, and subject to, Tatonka's receipt at closing of all the net sales proceeds on the Operating Assets (subject to its position set forth in this pleading regarding payments to Trustee's professionals and the Carve Out).  The various schools will then, without the large accounts payable, execute leases such that Pansophic will be incentivized to complete the purchase.  Therefore, in addition to its perfected security interest in all of Mosaica's operating assets, Tatonka is entitled to the net sales proceeds on the Operating Assets based solely on this new substantial consideration.

## CONCLUSION

WHEREFORE, the Court should approve the sale and direct that after closing costs and Receiver's professionals' fees are paid, all sales, proceeds (less

`the amount due to the IRS) are to be paid at closing to the primary lienholder, which in all cases is Tatonka, other than three of the real property sales. The proceeds of these three real property sales (Youngstown, Harrisburg & Jackson) should be paid at closing to their respective lienholders.

s/Graham H. Stieglitz
Michael L. Hall (PHV)
Graham H. Stieglitz (Ga. Bar #682047)

Attorneys for Plaintiff
TATONKA CAPITAL CORPORATION

BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATION OF COUNSEL

I hereby certify that the foregoing document has been prepared with Times New Roman, 14-point font, one of the font and point selections approved by the Court in LR 5.1.

                                                             s/Graham H. Stieglitz
                                                             Michael L. Hall (PHV)
                                                             Graham H. Stieglitz (Ga. Bar #682047)

                                                             Attorneys for Plaintiff
                                                             TATONKA CAPITAL CORPORATION

BURR & FORMAN LLP
171 17th Street, NW, Suite 1100
Atlanta, Georgia 30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email, on April 30, 2015:

Mosaica Education, Inc.
3400 Peachtree Road
Suite 550
Atlanta, GA 30326

Internal Revenue Service
401 W. Peachtree Street NW
Atlanta, GA  30308

J. Robert Williamson, Esq.
J. Hayden Kepner, Esq.
Scroggins & Williamson, P.C.
1500 Candler Building
127 Peachtree Street, N.E.
Atlanta, GA 30303
rwilliamson@swlawfirm.com
hkepner@swlawfirm.com

Katie S. Goodman, Receiver
GGG Partners, LLC
5883 Glenridge Drive NE
Suite #160
Atlanta, GA  30328

Ashley S. Thompson
Kevin A. Stine
Baker, Donelson, Bearman,
Caldwell & Berowitz, PC
Suite 1600, Monarch Plaza
3414 Peachtree Road, N.E.
Atlanta, GA  30326
kstine@bakerdonelson.com
athompson@bakerdonelson.com

James C. Cifelli
Managing Partner
Lamberth, Cifelli, Ellis & Nason, P.A.
Atlanta Financial Center
3343 Peachtree Road NE
Suite 550
East Tower
Atlanta, Georgia 30326

Ernest L. Greer
John D. Elrod
Greenberg Traurig
Terminus 200
3333 Piedmont Road, Suite 2500
Atlanta, GA  30305

Internal Revenue Service Centralized Insolvency
P.O. Box 7346
Philadelphia, PA  19101-7317

23907917 v2

15

| | |
|---|---|
| Michael H. Schroder<br>Swift Currie McGhee & Hiers<br>Suite 300<br>1355 Peachtree Street, NE<br>Atlanta, GA  30309<br>Mike.schroder@swiftcurrie.com | Ethan H. Cohen<br>Ballard Spahr LLP-Atl<br>Suite 1000<br>999 Peachtree Street<br>Atlanta, GA 30309<br>cohene@ballardspahr.com |
| Dana Brent Miles<br>Miles Hansford & Tallant, LLC<br>202 Tribble Gap Road<br>Suite 200<br>Cumming, GA 30040<br>dmiles@mhtlegal.com | Craig S. Ganz<br>Ballard Spahr LLP<br>1 East Washington Street<br>Phoenix, AZ 85004-2555 |
| Jonathan R. Secrest<br>Dickinson Wright, PLLC-OH<br>150 E. Gay Street<br>Columbus, OH 43215 | |

                                        s/Graham H. Stieglitz
                                        Michael L. Hall (PHV)
                                        Graham H. Stieglitz (Ga. Bar #682047)
                                        Michael L. Hall (PHV)

                                        Attorneys for Plaintiff
                                        TATONKA CAPITAL CORPORATION

BURR & FORMAN LLP
171 Seventeenth Street, N.W., Suite 1100
Atlanta, Georgia  30363
(404) 815-3000