UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL CORPORATION, a Colorado corporation, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-cv-03017-TCB |
| MOSAICA EDUCATION, INC., a Delaware corporation; MICHIGAN EDUCATIONAL FACILITIES, LLC, a Delaware limited liability company; ASI TEXAS, LLC, a Delaware limited limited liability company; EFA COMPANY LLC, a Michigan limited Liability company; LORAIN-LEAVITT PROPERTIES, LLC, a Georgia limited liability company; WARREN-ELM FACILITIES, LLC, a Georgia limited liability company; and COLUMBUS-MORSE PROPERTIES, LLC, a Georgia limited liability company, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS' ANSWER TO COMPLAINT FOR BREACH OF CONTRACT AND FOR APPOINTMENT OF A RECEIVER AND COUNTERCLAIMS

COME NOW MOSAICA EDUCATION, INC., MICHIGAN

EDUCATIONAL FACILITIES, LLC, ASI TEXAS, LLC, EFA COMPANY, LLC,

LORAIN-LEAVITT PROPERTIES LLC, WARREN-ELM FACILITIES, LLC,

461745

and COLUMBUS-MORSE PROPERTIES, LLC ("Defendants")[1] and file their

Answer and Counterclaims as follows:

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted

against Defendants.

## SECOND DEFENSE

Plaintiff improperly seeks recovery of an alleged "Outstanding

Indebtedness" of $19,061,475.44 (as of August 31, 2014) without reducing the

indebtedness for the value of certain notes and accounts receivable assigned to

Plaintiff by Defendants in April of 2014.  By such assignment, and by assignment

or seizure of cash or other notes and receivables and by obtaining from Defendants

powers of attorney over real estate assets, Plaintiff has received or obtain assets

having a value in excess of the amounts legitimately owed Plaintiff by Defendants.

## THIRD DEFENSE

Plaintiff's Complaint is barred under the doctrines of promissory estoppel or

equitable estoppel.

## FOURTH DEFENSE

Plaintiff has adequate remedies at law, and Plaintiff is not entitled to any

equitable relief sought in the Complaint.

---

[1] Gene Eidelman and Michael Connelly, direct or indirect shareholders or interest holders of the Defendants, and former officers of some of the Defendants, file this Answer and Counterclaims on behalf of the Defendants with the permission of the Court.

461745

## FIFTH DEFENSE

Plaintiff has unclean hands, and Plaintiff is not entitled to any equitable relief sought in the Complaint.

## SIXTH DEFENSE

By way of additional response, Defendant responds to the specific allegations of Plaintiffs' Complaint as follows:

## SUMMARY OF CASE

Plaintiff's "Summary of the Case" requires no response from Defendants. However, Defendants deny that they are in the business of "operating" charter schools.  Instead, MEI and/or its subsidiaries or affiliates entered into agreements to provide administrative and educational services to public charter schools in the United States. Defendants deny that they owe $20 million to Plaintiff and deny that Tatonka Capital Corporation ("Tatonka") holds a first lien on substantially all of MEI's operating assets.  Defendants admit that "foreclosure would adversely affect thousands of schoolchildren, teachers, others, and the going concern value of the business" and affirmatively alleges that Tatonka's actions have adversely affected thousands of schoolchildren, teachers, others, and the value of Mosaica's business.

461745

## PARTIES, JURISDICTION, AND VENUE

1.    Defendants are without sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained in Paragraph 1 of the Complaint.

2.    In response to the allegations contained in Paragraph 2 of the Complaint, Defendants admit that MEI is a Delaware corporation with its headquarters in New York City, New York.

3.    Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4.    Defendants admit the allegations contained in Paragraph 4 of the Complaint.

5.    Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6.    Defendants admit the allegations contained in Paragraph 6 of the Complaint.

7.    Defendants admit the allegations contained in Paragraph 7 of the Complaint.

8.    Defendants admit the allegations contained in Paragraph 8 of the Complaint.

9.    Defendants admit the allegations contained in Paragraph 9 of the Complaint.

10.   Defendants admit the allegations contained in Paragraph 10 of the Complaint.

461745

11.  Defendants admit the allegations contained in Paragraph 11 of the Complaint.

## FACTUAL ALLEGATIONS

## I. MEI'S EDUCATION MODEL

12.  In response to the allegations contained in Paragraph 12 of the Complaint, Defendants admit that MEI was founded in 1997 and that MEI entered into its first agreement to provide services to a public charter school in 1997 and that MEI's business has grown since then.  Defendants admit that MEI or one of its subsidiaries contracted with Advantage Schools, Inc. and related parties in August 2001, and the contract with Advantage Schools, Inc. speaks for itself as to its content and legal significance.  Defendants admit that MEI and various of its affiliates and subsidiaries assisted with the development of public charter schools in this country and that the combined organization was generating more revenues on an annualized basis at the time this action was commenced than it did in 2001.  Defendants admit that MEI has, among other things, worked with governments, community-based groups and not-for-profit organizations and that it has provided educational services, including implementation of a comprehensive educational model, to public charter schools in various localities.   Any allegations contained in in Paragraph 12 not admitted herein are denied.

13.  In response to the allegations contained in Paragraph 13 of the Complaint, Defendants admit that, among other things, MEI or its affiliates

and subsidiaries provide administrative and/or educational services to schools in the United States.   Defendants admit that at the time this action was commenced, MEI and its subsidiaries and affiliates provided administrative and/or educational services to schools in the United States with aggregate enrollments in excess of 10,000 students.   Defendants admit that MEI and its subsidiaries and affiliates provided educational and administrative services and support to schools, school personnel and school operators, including in some cases offering online courses and materials and a comprehensive educational model, including curriculum that it had either developed or had licensed.   Any allegations contained in Paragraph 13 not admitted herein are denied.

14.     In response to the allegations contained in Paragraph 14 of the Complaint, Defendants admit that MEI developed its Paragon© curriculum that provides a hands-on approach seeking to tailor the curriculum to students' varied intelligences and learning styles, is aligned to national and state education standards, and is research-based and classroom-tested with fifteen years of success. Defendants admit that Paragon© curriculum can be delivered digitally, including over the Internet, and that it can be accessed and implemented, at least in part, through "interactive whiteboard technology." Defendants admit that support materials for the implementation of Paragon © are available to teachers at schools that have licensed the curriculum.   Any allegations contained in in Paragraph 14 not admitted herein are denied.

461745

15.     In response to the allegations contained in Paragraph 15 of the Complaint, Defendants admit that, in some cases, MEI and/or its subsidiaries and affiliates have contracted with new public charter schools located within the geographical area of a school district that has been designated as being a district in "Academy Emergency" under that state's regulations.  In the case of failing schools, typically students are behind standard grade level. Any allegations contained in in Paragraph 15 not admitted herein are denied or Defendants lack sufficient knowledge with which to either admit or deny them.

## II.   MEI'S BUSINESS OPERATIONS

16.     In response to the allegations contained in Paragraph 16 of the Complaint, Defendants admit that MEI and/or its subsidiaries or affiliates have entered into agreements to provide educational or administrative services to public charter schools in those four states and admit that MEI and/or its subsidiaries or affiliates have entered into agreements with not-for-profit organizations that are seeking or have entered into charter contracts authorizing the operation of a public charter school; that such organizations typically have a board of directors or trustees; and that some of them have been designated as tax-exempt entities under section 501(c)(3) of the Internal Revenue Code.  Any allegations contained in in Paragraph 16 not admitted herein are denied.

461745

17.     In response to the allegations contained in Paragraph 17, Defendants admit that MEI has an Atlanta office but deny the allegation that "its business is operated out of offices located in Atlanta, Georgia."

18.     Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.     Defendants admit the allegations contained in Paragraph 19 of the Complaint, except Defendants deny that the Eidelmans own a majority of MEI's common-stock equivalents and deny that MEI has three "principals." Defendants admit that Mr. Murphy resides in New York and was at the time the complaint was filed a member of the MEI board of directors.

20.     In response to the allegations contained in Paragraph 20 of the Complaint, Defendants admit that MEI and all of its American subsidiaries each formally assert that their headquarters are in New York.  Defendants deny that the majority of MEI's employees who are not affiliated with a particular school live and work in Georgia, while about seven employees live and work in New York.  Defendants admit that at the time the complaint was filed, MEI did not contract with any schools located in New York.

21.     In response to the allegations contained in Paragraph 21 of the Complaint, Defendants admit that Gene Eidelman, the President and interim Chief Financial Officer of MEI, is based out of Georgia.  Defendants deny that the educational leadership of MEI operates from its Georgia offices, except that

461745

Defendants admit that Dr. Dawn Eidelman MEI's, Chief Education Officer, is based in Georgia.

22.     In response to the allegations contained in Paragraph 22 of the Complaint, Defendants deny that the Subsidiaries do not operate schools or any active business.  Defendants admit that certain subsidiaries or affiliates of MEI own real estate that is used as a school. Defendants admit that some of the facilities owned by subsidiaries or affiliates of MEI are used by charter schools served by MEI and that some of the real property owned by other subsidiaries or affiliates of MEI is currently not occupied.

23.     In response to the allegations contained in Paragraph 23 of the Complaint, Defendants admit that MEI and/or a subsidiary or affiliate has entered into agreements in various states to provide educational and administrative services to virtual or blended public schools and/or with school districts seeking to offer online services.

24.     In response to Paragraph 24 of the Complaint, Defendants admit that the Paragon© curriculum is proprietary to MEI and its licensees.

25.     In response to Paragraph 25 of the Complaint, Defendants admit that MEI and/or its subsidiaries or affiliates provide educational services and/or operate schools in countries outside the United States.

### III. MEI'S RECENT FINANCIAL DISTRESS

25.  Defendants deny the allegations contained in Paragraph 25 of the Complaint as stated.

461745

26.  In response to the allegations contained in Paragraph 26 of the Complaint, Defendants admit that MEI has engaged in development efforts to enable it to deliver educational programs to online and blended-model schools and, indeed, to operate such a school itself and further admit that fewer students are enrolled in online schools served by MEI relative to the number of students enrolled in "brick-and-mortar" schools it serves.  Defendants deny that their online school has operated at a net loss of approximately a million dollars a year for multiple years.

27.  In response to the allegations contained in Paragraph 27 of the Complaint, Defendants admit that some of the real property owned by subsidiaries or affiliates of MEI is currently not occupied.  Defendants deny that MEI has made few attempts to monetize these assets and has allowed listings for these real estate assets to expire.

28.  Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29.  In response to the allegations contained in Paragraph 29 of the Complaint, Defendants admit that MEI and/or an affiliate or subsidiary thereof provides services to schools in Arizona and admit that one of the schools in Arizona was unable to pay its rent or remain current in obligations to MEI. Defendants admit that an Arizona school is indebted to MEI in excess of $1 million, which Defendants believe is not collectable at this time.  Any allegations contained in in Paragraph 29 not specifically admitted herein are denied.

461745

31.   Defendants deny Paragraph 31 of the Complaint.

32.   In response to the allegations contained in Paragraph 32 of the Complaint, Defendants admit that MEI has invested in curriculum development and in other operations, including the development of online capabilities.   Any allegations contained in in Paragraph 32 not specifically admitted herein are denied.

33.   In response to the allegations contained in Paragraph 33 of the Complaint, Defendants admit that during FY 2014 MEI implemented various measures to reduce costs and increase revenues and cash flow, which were undertaken with Tatonka's support and, in some cases, at Tatonka's express dictate.   Any allegations contained in in Paragraph 33 not specifically admitted herein are denied.

34.   Defendants deny the allegations contained in Paragraph 34 of the Complaint as stated.   In August 2014, Tatonka seized more than $300,000 of MEI's cash deposited in a trust fund sub-account maintained at Vectra Bank for the benefit of Tatonka's clients, including MEI, and that most of the funds seized were owed to the IRS for payroll taxes.   Defendants deny that Tatonka conducted any conversations with MEI about Tatonka's intent to seize those funds and aver that Tatonka specifically represented that it could not and would not attempt to seize any funds deposited in the trust account.

35.   Defendants deny the allegations contained in Paragraph 35 of the Complaint.

461745

36.  Defendants deny the allegations contained in Paragraph 36 of the Complaint.  Defendants show that Tatonka and its agents sought to interfere with MEI's business and contractual relations by contacting board members of schools served by MEI, potential clients, regulators, MEI employees, and creditors, and wrongfully characterizing MEI's financial situation and its agreements with Tatonka.

37.  Defendants admit the allegations contained in Paragraph 37 of the Complaint.

38.  Defendants deny the allegations contained in Paragraph 38 of the Complaint.

## IV. MEI'S FINANCIAL OBLIGATIONS TO TATONKA

### A.   The Loans

39.  In response to the allegations contained in Paragraph 39 of the Complaint, Defendants admit that Tatonka has had a longstanding financial relationship with MEI and its subsidiaries, that Tatonka has provided financing to MEI for more than ten years, and that MEI has made debt service and fee payments to Tatonka throughout that period.  Defendants show that any documents purporting to grant or perfect Tatonka's alleged security interest in MEI's assets speak for themselves as to their content and legal significance.  Defendants admit that Tatonka and MEI have had longstanding financial relationships, including loans and advances made by Tatonka to MEI and/or certain of its subsidiaries and

461745

affiliates.  Any allegations contained in in Paragraph 39 not specifically admitted herein are denied.

      i.     The 2007 Loan

40.  In response to the allegations contained in Paragraph 40 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 40 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 40 of the Complaint, Defendants deny them.

41.  In response to the allegations contained in Paragraph 41 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 41 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 41 of the Complaint, Defendants deny them.

42.  In response to the allegations contained in Paragraph 42 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 42 of the Complaint are inconsistent with the content of the documents referred to in paragraph 42 of the Complaint, Defendants deny them.

461745

43.   In response to the allegations contained in Paragraph 43 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 43 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 43 of the Complaint, Defendants deny them.

44.   In response to the allegations contained in Paragraph 44 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 44 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 44 of the Complaint, Defendants deny them.

45.   In response to the allegations contained in Paragraph 45 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 45 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 45 of the Complaint, Defendants deny them.

ii.    The Revolver Loan

46.   In response to the allegations contained in Paragraph 46 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that

461745

the allegations contained in paragraph 46 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 46 of the Complaint, Defendants deny them.

47.   In response to the allegations contained in Paragraph 47 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 47 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 47 of the Complaint, Defendants deny them.

48.   In response to the allegations contained in Paragraph 48 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 48 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 48 of the Complaint, Defendants deny them.

49.   In response to the allegations contained in Paragraph 49 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 49 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 49 of the Complaint, Defendants deny them.

461745

50. In response to the allegations contained in Paragraph 50 of the Complaint, Defendants show that Paragraph 50 contains no allegations requiring response.

iii. The Project Loan

51. In response to Paragraph 51 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance. To the extent that the allegations contained in paragraph 51 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 51 of the Complaint, Defendants deny them.

52. In response to the allegations contained in Paragraph 52 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance. To the extent that the allegations contained in paragraph 52 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 52 of the Complaint, Defendants deny them.

53. In response to the allegations contained in Paragraph 53 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance. To the extent that the allegations contained in paragraph 53 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 53 of the Complaint, Defendants deny them.

461745

54.   In response to the allegations contained in Paragraph 54 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 54 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 54 of the Complaint, Defendants deny them.

55.   In response to the allegations contained in Paragraph 55 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 55 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 55 of the Complaint, Defendants deny them.

56.   In response to the allegations contained in Paragraph 56 of the Complaint, Defendants show that Paragraph 56 contains no allegations requiring response.

iv.   2012 Loan Agreement

57.   In response to the allegations contained in Paragraph 57 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 57 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 57 of the Complaint, Defendants deny them.

461745

v.      <u>Assignment of Notes and Accounts Receivable</u>

58.   In response to the allegations contained in Paragraph 58 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 58 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 58 of the Complaint, Defendants deny them.

vi. <u>Guaranties</u>

59.   In response to the allegations contained in Paragraph 59 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 59 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 59 of the Complaint, Defendants deny them.

**B.      <u>Stock Owned by Tatonka Affiliates</u>**

60.   In response to the allegations contained in Paragraph 60 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 60 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 60 of the Complaint, Defendants deny them.

461745

61.  In response to the allegations contained in Paragraph 61 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 61 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 61 of the Complaint, Defendants deny them.

C.   UCC Filings

62.   Defendants are without sufficient knowledge or information to form a belief as to the truthfulness of Paragraph 62 of the Complaint.  Defendants further show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 62 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 62 of the Complaint, Defendants deny them.

63.  In response to the allegations contained in Paragraph 63 of the Complaint, Defendants show that Paragraph 63 contains no allegations requiring response.

D.   Existing Defaults

64.  In response to the allegations contained in Paragraph 64 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 64 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 64 of the

461745

Complaint, Defendants deny them.  Defendants further deny that the Forbearance Agreement referred to in Paragraph 64 was the last Forbearance Agreement between the parties and deny that subsequent negotiations regarding forbearance were unsuccessful.

65.   In response to the allegations contained in Paragraph 65 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 65 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 65 of the Complaint, Defendants deny them.

66.   Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67.   Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.   Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.   Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.   Defendants deny the allegations contained in Paragraph 70 of the Complaint.

71.   Defendants deny the allegations contained in Paragraph 71 of the Complaint.

461745

72.   In response to the allegations contained in Paragraph 72 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 72 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 72 of the Complaint, Defendants deny them.

73.   Defendants deny the allegations contained in Paragraph 73 of the Complaint.

## V. TATONKA'S REMEDIES UNDER THE LOAN DOCUMENTS

74.   Defendants deny the allegations contained in Paragraph 74 of the Complaint except that Defendants admit that representatives of Tatonka and MEI have communicated and discussed possible resolution of their disputes, that the parties discussed the possible employment of a Chief Restructuring Officer, and that those discussions have not resulted in an agreement.

75.   Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.   In response to the allegations contained in Paragraph 76 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 76 of the Complaint are inconsistent with

461745

the content of the document or documents referred to in paragraph 76 of the Complaint, Defendants deny them.

77.   Defendants deny the allegations contained in Paragraph 77 of the Complaint.

## VI. THE NEED FOR A RECEIVER

78.   In response to the allegations contained in Paragraph 78 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 78 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 78 of the Complaint, Defendants deny them.   Defendants admit that ceasing MEI's operations would negatively affect the students served by MEI, MEI's employees, and other stakeholders, and would irreparably damage the value of MEI's business.

79.   Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.   Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.   Defendants deny the allegations contained in Paragraph 81 of the Complaint.

82.   Defendants deny the allegations contained in Paragraph 82 of the Complaint.

461745

83.   Defendants deny the allegations contained in Paragraph 83 of the Complaint.

84.   Defendants admit the allegations contained in Paragraph 84 of the Complaint.

85.   Defendants deny the allegations contained in Paragraph 85 of the Complaint.

86.   Defendants deny the allegations contained in Paragraph 86 of the Complaint.

<u>COUNT ONE - BREACH OF CONTRACT</u>

87.   Defendants reallege their responses to the allegations contained in Paragraphs 1 through 86 of the Complaint as if fully set forth herein.

88.   Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.   Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.   Defendants deny the allegations contained in Paragraph 90 of the Complaint and deny that Plaintiff is entitled to the relief sought under Count One.

<u>COUNT TWO: APPOINTMENT OF RECEIVER IN EQUITY</u>

91.   Defendants reallege their responses to the allegations contained in Paragraphs 1 through 90 of the Complaint as if fully set forth herein.

92.   Defendants deny the allegations contained in Paragraph 92 of the

461745

Complaint.

93.   Defendants deny the allegations contained in Paragraph 93 of the Complaint.

94.   Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.   The allegations contained in Paragraph 95 of the Complaint require no response.

96.   Defendants deny the allegations contained in Paragraph 96 of the Complaint and deny that Plaintiff is entitled to the relief sought under Count Two.

COUNT THREE: APPOINTMENT OF A RECEIVER AT LAW

97.   Defendants reallege their responses to the allegations contained in Paragraphs 1 through 96 of the Complaint as if fully set forth herein.

98.   In response to the allegations contained in Paragraph 98 of the Complaint, Defendants show that the document or documents referred to therein speak for themselves as to their content and legal significance.  To the extent that the allegations contained in paragraph 98 of the Complaint are inconsistent with the content of the document or documents referred to in paragraph 98 of the Complaint, Defendants deny them.

99.   Defendants deny the allegations contained in Paragraph 99 of the Complaint and deny that Defendants are entitled to the relief sought under Count Three.

461745

100. Any allegation contained in the Complaint not heretofore specifically admitted is expressly denied.

WHEREFORE, having fully answered the Complaint, Defendants respectfully request relief as follows:

a) that the Complaint be dismissed and that judgment be entered in favor of Defendants and against Plaintiff with all costs cast against Plaintiff; and

b) that the Court grant such other relief as is just and proper.

## COUNTERCLAIMS

1.   Plaintiff is subject to the jurisdiction of this Court by virtue of having filed the within Complaint.  Venue properly lies in this district.

2.   The amount in controversy in these Counterclaims, exclusive of interest and costs, between Tatonka and each of the Defendants exceeds $75,000.

3.   The Court has jurisdiction over Plaintiff's Counterclaim pursuant to 28 U.S.C. § 1332.

## COUNT ONE

4.   Defendants reallege their allegations contained in Paragraphs 1 through 3 of these Counterclaims as if fully set forth herein.

5.   Plaintiff has breached its duty of good faith and fair dealing with regard to its transactions with Defendants.

461745

6.   As a result of the breach, Plaintiff is not entitled to any recovery from the Defendants in connection with the loans that are the subject of Plaintiff's Complaint, and Defendants are entitled to recover damages arising from Plaintiff's bad faith conduct.

## **<u>COUNT TWO</u>**

7.   Defendants reallege their allegations contained in Paragraphs 1 through 6 of these Counterclaims as if fully set forth herein.

8.   In February and April of 2014, Defendants assigned certain notes and accounts receivable to Plaintiff by way of assignment agreements that are attached as Exhibits 266, 267, 268, 269, 271 and 272 of Docket No. 162 in this matter.  Those assignment agreements contain releases (all at Paragraph 3(e)) whereby Defendants may have released Plaintiff for Plaintiff's misconduct or otherwise actionable conduct prior to that date.

9.   The notes assigned to Plaintiff were claimed as Plaintiff as collateral for the loans made to Defendants.

10. The assignments do not permit Plaintiff dispose of the notes and accounts receivable assigned to Plaintiff in a commercially unreasonable manner.  Rather, the only recitation in the assignments with regard to Plaintiff's obligations (all at Paragraph 3(h)) is that, when Plaintiff is paid by the note/account obligors, Plaintiff is permitted to apply such payments against any of the amounts outstanding under the Indebtedness owed by Defendants as Plaintiff shall choose.

461745

11. Rather than continuing to accept payments from the note/account obligors, Plaintiff has agreed to accept discounted payments on some of those obligations in satisfaction of the notes/accounts.

12. As an example, Plaintiff and the Receiver obtained authorization from this Court to accept a discounted payment on notes from "CATA" and "CPA." *See* Docket No. 61.

13. In the Order approving the agreements with CATA and CPA, the Court acknowledged that an issue remains as to whether the $4.3 million of debt forgiveness to CATA and CPA should be credited against Defendants' indebtedness to Plaintiff.  The Court stated that this issue "will remain for another day if a dispute arises about Tatonka's failure to credit MEI's indebtedness." *See* Order, Docket No. 61, at p. 5.

14. Plaintiff has apparently agreed with the Receiver that all but one of the notes/accounts receivable assigned to Plaintiff in February and April of 2014 will be forgiven without any credit to Defendants' indebtedness.  *See* Response, Docket No. 165 at p. 9 and at p. 12.

15. Plaintiff's disposition of the notes/accounts assigned to it by Defendants is commercially unreasonable under the Uniform Commercial Code.  Defendants contend that the notes/accounts have substantial current and prospective value.

16. As a result of its improper and commercially unreasonable disposition of collateral, Plaintiff is not entitled to any recovery from the

461745

Defendants in connection with the loans that are the subject of Plaintiff's Complaint.

## **COUNT THREE**

17. Defendants reallege their allegations contained in Paragraphs 1 through 16 of these Counterclaims as if fully set forth herein.

18. Plaintiff and its agents falsely represented facts and circumstances to Defendants' clients and potential clients, employees, regulatory authorities, current and potential suppliers of funding, strategic partners and others, in an effort to mislead and to harm Defendants and their officers and employees.

19. More specifically, false statements were published or issued by Plaintiff at or near a time when Defendants were one of the two finalists for the largest charter school contracts that any district had ever awarded (in York, PA), and at a time when Defendants' chief executive officer was making a presentation to the York, PA school board, to disastrous, anticipated, and intended effect.

20. Plaintiff tortuously interfered with Defendants' business relationships and contracts.

21. Defendants are entitled to recover their damages for Plaintiff's wrongful and injurious conduct in an amount to be proved at trial.

## **COUNT FOUR**

22. Defendants reallege their allegations contained in Paragraphs 1 through 21 of these Counterclaims as if fully set forth herein.

461745

23. In May 2014, Fell paid approximately $1.75 million (the "Fell Settlement") in settlement of a lawsuit.  Pursuant to cash flow projections MEI and Tatonka shared before and after the Fell lawsuit, Tatonka was aware that MEI expected to receive approximately 75% of the Fell Settlement proceeds for its use in operations, with the remainder to be used to pay down the obligations to Tatonka. Nevertheless, Tatonka seized the entire Fell settlement, initially refusing to release any funds to MEI. Tatonka ultimately agreed to pay approximately $450,000 of the proceeds to ADP, MEI's payroll and tax payment services company, for past-due payroll taxes. Tatonka also agreed to pay approximately $88,000 in real estate taxes to Midland County, Texas, from funds that it controlled from the Fell Settlement, but it ultimately reneged on that agreement and deducted funds for this payment from the Vectra Account described below. Tatonka's failure to release funds in amounts consistent with the mutually agreed-upon cash flow projections disrupted MEI's operations, prevented MEI from marketing its schools as planned and caused MEI to incur additional liabilities for payroll taxes, resulting in ADP's refusal to provide tax remittance services for the Company.

24. In or about 2012, MEI began depositing funds in a bank account held in Tatonka's name at Vectra Bank (the "Vectra Account"). Tatonka represented that the Vectra Account was a trust account from which MEI would instruct Tatonka to make withdrawals. Tatonka represented to MEI that use of the Vectra account would protect the funds from creditors, and that not

461745

even Tatonka would be able access the funds in the Vectra Account without MEI's consent and direction.

25. Among other things, MEI used the funds in the Vectra account to pay payroll and payroll taxes. Charter schools managed by MEI would deposit funds in the Vectra Account, and MEI would transfer those funds to ADP or, after ADP ceased providing tax payment services, the IRS.

26. On or about August 4, 2014, MEI directed Tatonka to pay approximately $230,000 from the Vectra Account to the IRS for employee trust fund and withholding taxes. Rather than pay the funds to the IRS as MEI instructed (and to pay approximately $30,000 MEI directed to be paid to the Ohio state pension plan for its teachers), Tatonka took control of and seized all funds in the Vectra Account, totaling approximately $298,881.03.

27. As a result of Tatonka's seizure of the funds in the Vectra Account, MEI was unable to pay federal payroll taxes due to the IRS.

28. Although Tatonka's seizure caused the non-payment of federal payroll taxes, Tatonka represented to Defendants' clients and potential clients, employees, regulatory authorities, current and potential suppliers of funding, strategic partners and other third parties that Defendants were responsible for the non-payment.

29. As a result of Tatonka's wrongful seizure of funds deposited in what Tatonka represented to be a trust account, Tatonka should be ordered to pay MEI's intended beneficiary of the funds (the IRS) and should be ordered to pay Defendants punitive damages in an amount to be proved at trial.

461745

## JURY DEMAND

Defendants hereby demand a trial by jury as to their counterclaims in this action.

## PRAYERS FOR RELIEF

WHEREFORE, Defendants pray as follows:

(a)  That Defendants be awarded damages for Plaintiff's conduct as set forth in the Counterclaims;

(b)  That Defendants have judgment for all costs of this action, including reasonable attorney's fees; and

(c)  That Defendants have such other and further relief as this Court deems just and proper.

Respectfully submitted, this 3rd day of May, 2015.

LAMBERTH, CIFELLI, ELLIS
  & NASON, P.A.

By: */s/ James C. Cifelli*
    James C. Cifelli
    Georgia Bar No. 125750
    William D. Matthews
    Georgia Bar No. 470865

Attorneys for Gene Eidelman and Michael Connelly

    3343 Peachtree Road, NE
    Suite 550, East Tower
    Atlanta, Georgia  30326
    (404) 495-4495
    Fax:  (404) 262-9911

461745

## <u>CERTIFICATION OF COMPLIANCE WITH LR 5.1, ND GA.</u>

Counsel hereby certifies that, pursuant to LR 5.1(D), NDGa, this filing has been prepared in an approved font, namely Times Roman 14.  Counsel hereby certifies that the margins are in compliance with LR 5.1.

This 3rd day of May, 2015.

> LAMBERTH, CIFELLI, ELLIS
> & NASON, P.A.
>
> By:  s/ William D. Matthews
>     James C. Cifelli
>     Georgia Bar No. 125750
>     jcifelli@lcsenlaw.com
>     William D. Matthews
>     Georgia Bar No. 470865
>     wdm@lcsenlaw.com
> ***Attorneys for Gene Eidelman and***
> ***Michael Connelly***
> 3343 Peachtree Road, NE, Suite 550
> Atlanta, GA  30326
> Telephone:  404.262-7373
> Facsimile:   404.262-9911

461745

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing

Answer with the Clerk of the Court via the CM/ECF system, which will

automatically send notification to the attorneys of record, which constitutes

service on those attorneys pursuant to LR 5.1(A)(3), NDGa.

This 3rd day of May, 2015

*/s/ William D. Matthews*
William D. Matthews

461745