UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL CORPORATION, | : | |
| | : | |
| Plaintiff, and | : | |
| | : | |
| CXA CORPORATION, | : | |
| | : | |
| Intervenor Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-cv-03017-TCB |
| MOSAICA EDUCATION, INC., | : | |
| MICHIGAN EDUCATIONAL | : | |
| FACILITIES, LLC, ASI TEXAS, LLC, | : | |
| EFA COMPANY, LLC, LORAIN- | : | |
| LEAVITT PROPERTIES, LLC, WARREN- | : | |
| ELM FACILITIES, LLC, and COLUMBUS | : | |
| MORSE PROPERTIES, LLC, | : | |
| | : | |
| Defendants. | : | |

## SHAREHOLDERS' MOTION TO CONTINUE HEARING REGARDING PROPOSED SALE, OR, ALTERNATIVELY, OBJECTION TO RECEIVER'S MOTION TO APPROVE PROPOSED SALE

COME NOW Gene Eidelman, and Michael Connelly (collectively, the "Shareholders"), parties-in-interest, and direct or indirect shareholders of Defendants, and file their Motion to Continue Hearing Regarding Proposed Sale. In the event the hearing is not continued, Shareholders hereby file their alternative objection to the *Receiver's Motion to Approve Sale of Substantially All of the*

461763

*Assets of the Defendants, Including Real Estate* [Dkt. No. 145] (the "Sale Motion")

as follows:

## I.      MOTION TO CONTINUE SALE HEARING

### A. Approval of the Proposed Sale is Premature

1. <u>The Receiver Has Produced No Binding Agreement From Which Terms Can be Evaluated.</u>

The Court cannot reasonably make an assessment of benefits to the Receivership estate or to its stakeholders in the absence of an asset purchase agreement between Mosaica Education, Inc. ("MEI") acting through GGG Partners, LLC (the "Receiver") and Pansophic Learning US, LLC ("Pansophic"). The Receiver has produced a short, vague, internally inconsistent and explicitly non-binding letter of intent ("LOI") in which the prospective parties have failed to provide an identification or allocation of price to specific assets or to specific categories of assets – which is necessary to determine the priorities of lienholders and the rights of general creditors.  The stakeholders currently have no real idea of the ultimate sale price that Pansophic may pay, due to the unlimited price adjustment feature contained in the LOI attached to the Sale Motion.  Far from a typical adjustment provision based on fluctuating cash, inventory, and receivables levels, the adjustment provision in the LOI gives the Shareholders reason to believe the purchaser will demand a significant price reduction.  In short, there is no concrete proposal before the Court.

The Shareholders have requested a copy of the asset purchase agreement between the Receiver and Pansophic, but the Receiver's counsel has continued to indicate that the asset purchase agreement is still under negotiation, and the terms have not been finalized.  Even if an APA is produced on the afternoon of May 4 or the morning of May 5, the parties will have had insufficient time to review the terms of the agreement, compare its terms to alternative offers or business continuation options.  Finally, the Pansophic LOI contemplates that certain of MEI's "online school assets" will not be transferred until December 12, 2015 and that "provision for the independent continued operation of that business unit transfer date will be needed."  The Receiver has not disclosed how the "online school assets" will continue to operate and has also not disclosed any transition services agreement that Pansophic is expected to require to be executed by the Receiver in order to ensure that MEI's online school assets are maintained prior to their transfer in December, 2015.

2.  <u>The Sale Process Has Been Unfair.</u>

Information has been withheld from the shareholders that might have permitted them to evaluate the relative virtues of the proposed sale, once its terms become clear.  For example, the Sale Motion alleged evidence of six letters of intent, of which Pansophic's offer is deemed superior.  Yet the Receiver has refused to share these other offers, and, despite promising as recently as April 30 to disclose even summaries of the competing bids, to date the Shareholders have

461763

received nothing.  The Receiver represents that Pansophic's bid is the best offer available yet denies the Shareholders and interested parties information with which to test that assertion.  The Sale Motion should be continued to permit the Receiver to cure the defects in the sale process to the extent possible.

> ### B. Additional Time Will Be Needed Once a Binding Asset Purchase Agreement is Negotiated and Produced or Filed.

Once a binding asset purchase agreement containing certain and specific terms of the proposed sale is negotiated, once the particulars of the sale process are adequately disclosed to all stakeholders, following a reasonable period of time for consideration, only then should the Court take up the Receiver's request for approval of an asset sale.

> ### C. There is No Justification for Expedited Consideration of the Proposed Sale.

There is no financial emergency requiring undue haste.  Although the Receiver represents possible cash shortages over the course of the next few weeks, the Shareholders, who are former directors and officers of MEI and its subsidiaries, know differently.  The Receiver has on a number of occasions in this case underrepresented the projected cash position of the Companies.  Additionally, the Receiver appears to have failed to forecast and pursue the collection of significant receivables that MEI's account obligors have the resources to pay.  Finally, the Receiver has denied the Shareholders access to payroll and banking information from which a proper assessment of the Companies' cash position can be made.

461763

Accordingly, consideration of the Receiver's proposed sale is premature, and the hearing on the proposed sale should be continued. The Purchase and Sale Agreement and exhibits and the Transition Services Agreement will presumably be completed within a matter of days.

## II.     OBJECTION TO PROPOSED SALE

### A. There are No Agreements for the Court to Consider.

As set forth above, the Receiver has not filed or produced any definitive documents (including any asset purchase agreement or transition services agreement). There is no deal before the Court to approve. Based on the LOI, the Receiver and Pansophic appear to seek carte blanche authorization for a transaction whose critical elements have yet to be developed. This does not meet any reasonable standard for the sale of virtually all the assets of this business.

### B. The Proposed Purchase Price is Unreasonably Low.

To the extent that the parameters of a deal can be ascertained, the proposed sale does not bring reasonable value for the assets.

1.   The Price Reduction Provision Makes the Purchase Price Uncertain or Speculative.

The price reduction provision of the letter of intent may lead to significant erosion of the sale price. The Buyer has reserved the right to reduce the purchase price to the extent schools decline to enter into new contracts or renew or continue their management by MEI's successor. The Shareholders believe there is a

461763

likelihood that the prospective purchaser will encounter some difficulty in maintaining the roster of schools under management, and therefore expect Pansophic to demand a significant purchase price reduction.

2.  <u>The Forgiveness of Indebtedness is Unfair.</u>

The Receiver's forgiveness of over $15 million in valuable receivables is a give-away in exchange for whatever short-term benefits the Receiver believes the transaction brings.  As explained by Tatonka in its conditional support for the sale, at least $15 million in notes and receivables assigned to Tatonka for its alleged $22 million claim are to be reassigned to MEI at closing so that the Receiver can forgive the obligors, in an effort to ensure the obligors' continued willingness to do business with the surviving entity and thereby "incentivize" Pansophic to close.  In other words, $15,000,000 in assets will be forgiven in exchange for $14,000,000 in purchase price for the business assets (even prior to the inevitable price reduction). The Shareholders believe the business operations are worth far more than $14 million, and certainly more than less than zero.

As set forth in the Sale Motion and in the LOI, only $14 million of the purchase price is allocated toward "MEI business assets and operations." However, the LOI discloses that Tatonka will assign to MEI all notes and accounts receivable from the Charter Schools that had been assigned to Tatonka in February or April of 2014 (as set forth in Paragraph 58 of the Complaint) except that an undefined note receivable known as the "CATA/CPA Note" will not be assigned.

461763

In its filing (Docket No. 162) on April 29, 2015, Tatonka discloses that a $4.8 million indebtedness owing to MEI from Columbus Humanities, Arts, and Technology Academy, Inc. ("CHATA") will be reassigned to MEI (and the Receiver) so that the Receiver can declare it satisfied.   Tatonka refers to this reassignment as "substantial consideration" provided by Tatonka, but neither the Receiver nor Tatonka disclose any valuation of the note or receivable being forgiven or whether the forgiveness of $4.8 million of indebtedness means that the $14 million allocated to MEI's business assets should, in reality be considered to be a $9.2 million offer for those assets.  Furthermore, in a filing (Docket No. 165) on April 30, 2015, Tatonka discloses that the deal with Pansophic and the Receiver actually involves the forgiveness of even more notes or accounts.  Tatonka states in that filing (on p. 12) that more than $10 million indebtedness owed to MEI (and assigned to Tatonka in April of 2014) will be reassigned to MEI so that the Receiver can declare such indebtedness satisfied.  This, to "incentivize" Pansophic. Again, neither the Receiver nor Tatonka disclose any valuation of the notes or receivable being forgiven or whether the satisfaction of $10 million of indebtedness means that the $14 million allocated to MEI's business assets should, in reality be considered to be a purchase price valuing those assets at less than zero dollars.  The Shareholders believe the notes and receivables to be forgiven are fairly valued as carried on MEI's books, maintained in conjunction with its audited financial statements.

461763

**C. The Sale Process is Tainted.**

The Receiver disclosed to the Shareholders that the sale proposal to prospective bidders focused on the Receiver's objective of having sufficient cash from closing to pay transaction costs, certain taxes, Tatonka's claim, and the fees of the Receiver and its professionals.  By focusing on the amount necessary to satisfy, essentially, Tatonka and receivership expenses, this process chilled the bidding – a result now obvious in light of the insufficient, indefinite price proposed in the nonbinding LOI.  For this reason alone, the sale should not be approved.

**D. No Immediate Distribution of Sale Proceeds Should be Made to Tatonka.**

Tatonka has only recently (on April 29, 2015) produced an accounting and evidence of its liens.  The parties have had insufficient time to review Tatonka's documents to determine if Tatonka has valid, perfected first-position liens and if Tatonka's statement of the amounts owing to it are correct or subject to dispute. Additionally, the Shareholders believe the Defendants have claims against Tatonka that have been asserted in counterclaims filed by Defendants with their Answer to the Complaint in this action.  Upon information and belief, if a distribution is made to Tatonka, Tatonka will, in turn, pass the funds to its participating lenders and its principals – leaving Tatonka as a counterclaim defendant with no source of funds to pay the damages asserted in the counterclaims in the event the counterclaims are successfully prosecuted.

461763

### E. The Receiver's Proposed Sale Does Not Comply with Applicable Law.

At hearing for a proposed private sale of realty or of personalty, a receiver appointed by a federal court must show that the best interests of the receivership are served by the proposed private sale.  Also, the Court must appoint three independent appraisers to establish the value of the property being sold for purposes of determining a minimum sales price, and the proposed purchase price must be at least two-thirds of the appraised value.

Specifically, 28 U.S.C. §2001(b) provides (with regard to sales of realty):

(b)  After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.  Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities.  No private sale shall be confirmed at a price less than two-thirds of the appraised value.  Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. §2001(b).  Furthermore, 28 U.S.C. §2004 provides: "Any personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, unless the court orders otherwise." Therefore, the Receiver's proposed sale of real and personal property should be

461763

analyzed under Sections 2001(b) of Title 28.  The Receiver has not represented that it has obtained appraisals of the business assets from three disinterested persons.  Accordingly, the Sale Motion should be disallowed.

WHEREFORE, the Shareholders request that the hearing scheduled on the Sale Motion be continued.  Alternatively, the Shareholders request that the Court enter an Order denying the Sale Motion.

Respectfully submitted, this 4th day of May, 2015.

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.

By*: /s/ James C. Cifelli*
    James C. Cifelli
    Georgia Bar No. 125750
    William D. Matthews
    Georgia Bar No. 470865

**Attorneys for Gene Eidelman**

3343 Peachtree Road, NE
Suite 550, East Tower
Atlanta, Georgia  30326
(404) 495-4495
Fax:  (404) 262-9911

MICHAEL CONNELLY

*/s/Michael Connelly*
Michael Connelly, *pro se*

## **CERTIFICATION OF COMPLIANCE WITH LR 5.1, ND GA.**

Counsel hereby certifies that, pursuant to LR 5.1(D), NDGa, this filing has been prepared in an approved font, namely Times Roman 14.  Counsel hereby certifies that the margins are in compliance with LR 5.1.

This 4th day of May, 2015.

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.

By:  s/ William D. Matthews
    James C. Cifelli
    Georgia Bar No. 125750
    jcifelli@lcsenlaw.com
    William D. Matthews
    Georgia Bar No. 470865
    wdm@lcsenlaw.com

***Attorneys for Gene Eidelman***

3343 Peachtree Road, NE, Suite 550
Atlanta, GA  30326
Telephone:  404.262-7373
Facsimile:   404.262-9911

461763

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing Motion to Continue Hearing with the Clerk of the Court via the CM/ECF system, which will automatically send notification to the attorneys of record, which constitutes service on those attorneys pursuant to LR 5.1(A)(3), NDGa.

This 4th day of May, 2015

*/s/ William D. Matthews*
William D. Matthews

404539