IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TATONKA CAPITAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> CXA CORPORATION, <br><br> Intervenor Plaintiff, <br><br> v. <br><br> MOSAICA EDUCATION, INC., MICHIGAN EDUCATIONAL FACILITIES, LLC, ASI TEXAS, LLC, EFA COMPANY, LLC, LORAIN-LEAVITT PROPERTIES, LLC, WARREN-ELM FACILITIES, LLC, and COLUMBUS-MORSE PROPERTIES, LLC, <br><br> Defendants. | Civil Action <br> File No. 1:14-CV-03017-TCB |

### CXA CORPORATION'S OBJECTION TO RECEIVER'S SECOND BULK SALE MOTION

COMES NOW Intervenor Plaintiff CXA Corporation ("CXA"), and submits this objection to the *Receiver's Supplemental Motion to Approve Sale of Substantially All of the Assets of the Defendants, Including Real Estate* [Dkt. No. 185] (the "Second Bulk Sale Motion") as follows:

## I. Introductory Statement

On May 21, 2015, the court-appointed receiver, GGG Partners, LLC (the "Receiver"), filed the Second Bulk Sale Motion, seeking the Court's approval and confirmation of a proposed sale (the "Proposed Sale") of the business assets of Mosaica Education, Inc. ("MEI"). CXA objects to the Second Bulk Sale Motion as explained in more detail below, and CXA reserves the right to object on additional grounds at the hearing scheduled on May 27, 2015.

## II. The Second Bulk Sale Motion Does Not Fulfill the Statutory Requirements Set Forth in 28 U.S.C. §§ 2001 and 2004.

The Court's confirmation of the Proposed Sale is governed by 28 U.S.C. § 2001 and 28 U.S.C. § 2004. First, a sale of MEI's business assets generally must meet the requirements for a sale of real property under 28 U.S.C. § 2001. *See* 28 U.S.C. § 2004. Thus, to confirm the Proposed Sale, the Court must find the Receiver met the following requirements:

(a) timely and sufficient notice of the Proposed Sale has been given to "all interested parties", which necessarily includes the creditors of one or more of the named Defendants who are not already parties to this case;

(b) at least three appraisals of MEI's business assets by three disinterested persons;

2

(c) the purchase price for MEI's business assets is at least two-thirds (2/3) of their appraised value; and

(d) the publication of the terms of the Proposed Sale in one or more newspapers of general circulation sufficiently in advance of the closing.

**Where the Receiver has not met this burden, the Court generally cannot confirm the Proposed Sale.** *See, e.g., U.S. v. Little,* 2008 WL 2676808, at *2 (E.D. Cal. June 30, 2008) (requiring four-week notice requirement for judicial sale of real and personal property under 28 U.S.C. § 2004 and *Tanzer*); *S.E.C. v. T-Bar Res., LLC,* No. CIV. A. 3:07CV1994-B, 2008 WL 4790987, at *4 (N.D. Tex. Oct. 28, 2008) (publication requirement in 28 U.S.C. § 2001 "protects the estates's interests by forbidding confirmation of a private sale when another offeror comes forward" with better offer).

Here, aside from the real estate involved in the Proposed Sale, the Receiver has not produced or disclosed any independent, third-party expert appraisals or valuations for MEI's business assets.[1]  Ms. Goodman conceded at an earlier

---

[1] The Receiver's obligation to obtain three appraisals under 28 U.S.C. § 2001 is expressly limited to sales of realty.  However, 28 U.S.C. § 2004 indicates that personalty (e.g., MEI's business assets), like realty, "shall be sold in accordance with § 2001 … unless the court orders otherwise."  Absent "extraordinary circumstances", the Receiver should respect the appraisal process set forth in

evidentiary hearing on May 5th that the Receiver did not bother appraising any of MEI's business assets. There is no indication that the Receiver has now obtained the requisite valuations, despite contentions from MEI's shareholders that the previous sale transaction grossly undervalued MEI's business assets and CXA's previous objection to the omission of appraisals in connection with the Receiver's efforts to sell MEI's business assets.

**<u>The only way the Receiver can avoid 28 U.S.C. § 2001(b)'s requirements is if the Receiver proves "extraordinary circumstances" justify deviation from those requirements.</u>** *Tanzer v. Huffines*, 412 F.2d 221, 222 (1969) (holding 28 U.S.C. § 2004 "does express a preferential course to be followed in connection with a court authorized sale of property … except under extraordinary circumstances."). The Receiver does not assert that extraordinary circumstances require deviation from 28 U.S.C. § 2004 in the Second Bulk Sale Motion, let alone provide details to support a finding of extraordinary circumstances.

---

§ 2001. *See, e.g., Tanzer v. Huffines,* 412 F.2d 221, 222 (3d Cir. 1969) (district court's decision to expedite receiver's sale of corporate stock without appraisal justified because receiver demonstrated "extraordinary circumstances" -- namely, the receivership entity's dire financial condition and the purchaser's deadline to close).

Unlike *Tanzer*, where the Third Circuit determined the district court did not abuse its discretion in approving the sale of corporate stock without strict compliance with 28 U.S.C. § 2001, the proposed sale transaction here is a private sale. In *Tanzer,* the district court approved a public sale and permitted competing bids up to the date of the expedited confirmation hearing. The district court approved the sale at a price in excess of $24.00 per share, substantially above the recommended offer of $20.25 per share under the *Tanzer* receiver's proposed contract. Therefore, *Tanzer* <u>did</u> <u>not</u> involve a waiver under a private sale of the requirement to obtain appraisals from three disinterested persons showing the sale price meets the two-thirds (2/3) threshold for confirming the sale. In sum, the Court should conclude there are no extraordinary circumstances here that excuse the Receiver from following the sale procedures of 28 U.S.C. § 2001(b).

**III.   The Proposed Sale is not in the Best Interests of All Parties.**

If this Court orders the sale of any or all of the Receivership Property, such assets should be sold "at the best price under the circumstances." *Tanzer*, supra at 222. As the proponent of the Proposed Sale, the Receiver bears the burden of proving it is in the best interest of the receivership estate. In the absence of an asset purchase agreement to review and the possibility that any asset purchase

agreement ultimately executed with Tatonka will materially differ from the terms of the letter of intent, the Receiver cannot prove that the best interests of the Receivership Estate are met by the Proposed Sale.

Even if the terms set forth in the non-binding letter of intent represent the final terms of the Proposed Sale, it appears to be in the best interests of only Tatonka and the Receiver. Tatonka will receive the assets at a distressed price (including Defendants' counterclaims), while the Receiver insures its fees and the fees of its professionals are paid in full. As Tatonka proposed the Receiver in the first place, the "arm's length" nature of the Proposed Sale is questionable.

In contrast, if the Second Bulk Sale Motion is granted, and the Proposed Sale is consummated as proposed, then CXA and other similarly situated creditors, including the IRS, will receive $0 from the sale. CXA along with untold other creditors holding in excess of $25 million (or over 50%) of the liabilities owed by MEI as of June 30, 2014 will be left with nothing from the sale of MEI's business assets[2], and the possibility of rehabilitating MEI to ever repay any portion of those debts will be extinguished altogether.

---

[2] CXA has an undisputed first-priority security interest in and mortgage lien against real property in Jackson, Michigan and Harrisburg, Pennsylvania. CXA recognizes it will recover a portion of its debt from the ultimate disposition of those properties but projects a combined deficiency in excess of $1.5 million.

A receivership is not intended as a vehicle to promote the interests of one creditor or one group of creditors to the exclusion of others. The Receiver is an officer of the Court with a fiduciary duty to all parties in interest to the matters at hand. The Receiver is obligated as a fiduciary to maximize the value of the receivership estate for all constituents. Here, the Receiver appears to have negotiated a deal that will benefit only Tatonka and the Receiver.

**IV.    Additional Objections to the Second Bulk Sale Motion**

Based on CXA's review of the Second Bulk Sale Motion, the Receiver has not completely disclosed the terms of the proposed sale transaction, referring only to a non-binding letter of intent. As admitted in the Second Bulk Sale Motion, the Receiver does not even have a formal asset purchase agreement in place for the creditors to review and the Court to approve. Therefore, the approval of the Proposed Sale is premature.

In addition, the Receiver requests "any Order approving the proposed sale be effective immediately[.]" Any sale should fully comply with 28 U.S.C. § 2001, 28 U.S.C. § 2004, and other applicable law. Importantly, the Court's order on the Second Bulk Sale Motion should not impair any party's right to determine whether appellate review is appropriate.

## V. Reservation of Rights

CXA's review of the Second Bulk Sale Motion is ongoing. Accordingly, the objections set forth here do not necessarily represent an exhaustive list. CXA reserves the right to amend and/or supplement these objections at or prior to any hearing on the Second Bulk Sale Motion.

## VI. Conclusion

For the reasons stated above, CXA requests: (i) that the Court require the Receiver to provide detailed explanation as to the valuation of the assets owned by MEI and the Subsidiaries, and provide all interested parties (subject to a Non-Disclosure Agreement, if appropriate) with full financial disclosures so that CXA, other creditors, and this Court can make a determination as to whether the Receiver's proposed sale is in the best interests of the receivership estate; (ii) that the Court delay or deny authorization for the Receiver's sale proposed sale, if the Receiver (and any other proponents of the sale) fail to prove the proposed sale is in the best interests of the receivership estate; and (iii) that the Court grant CXA such other and further relief the Court deems just and equitable under the circumstances.

Submitted by:

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*/s/ Kevin A. Stine*
Kevin A. Stine
Georgia Bar No. 682588
kstine@bakerdonelson.com
Ashley S. Thompson
Georgia Bar No. 100109
athompson@bakerdonelson.com
3414 Peachtree Road
Monarch Plaza, Suite 1600
Atlanta, Georgia 30326
(404) 577-6000
*Counsel for CXA Corporation*

9

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing pleading has been served upon the following registered users via the CM/ECF system and upon all other persons and entities via first-class United States mail, postage prepaid, at the addresses stated:

Michael Leo Hall, Esq.
Graham H. Stieglitz, Esq.
Burr & Forman LLP
171 Seventeenth St., N.W.
Suite 1100
Atlanta, GA 30363

James C. Cifelli, Esq.
William D. Matthews, Esq.
Lamberth, Cifelli, Ellis & Nason, P.A.
3343 Peachtree Rd., NE
Suite 550
Atlanta, GA 30326

J. Robert Williamson, Esq.
J. Hayden Kepner, Esq.
Scroggins & Williamson, P.C.
1500 Candler Building
127 Peachtree Street, N.E.
Atlanta, GA 30303

Date: May 26, 2015

Submitted by:

*/s/ Kevin A. Stine*
Kevin A. Stine
Georgia Bar No. 682588
*Counsel for CXA Corporation*