UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL | : | |
| CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-cv-03017-TCB |
| MOSAICA EDUCATION, INC., | : | |
| MICHIGAN EDUCATIONAL | : | |
| FACILITIES, LLC, ASI TEXAS, LLC, | : | |
| EFA COMPANY, LLC, LORAIN- | : | |
| LEAVITT PROPERTIES, LLC, WARREN- | : | |
| ELM FACILITIES, LLC, and COLUMBUS | : | |
| MORSE PROPERTIES, LLC, | : | |
| | : | |
| Defendants. | : | |

**SHAREHOLDERS' OBJECTION TO RECEIVER'S
SUPPLEMENTAL MOTION TO APPROVE PROPOSED SALE**

COME NOW Gene Eidelman, and Michael Connelly (collectively, the "Shareholders"), parties-in-interest, and direct or indirect shareholders of Defendants, and file their Objection to the *Receiver's Supplemental Motion to Approve Sale of Substantially All of the Assets of the Defendants, Including Real Estate* [Dkt. No. 185] (the "Sale Motion") as follows:

On May 21, 2015, the Receiver filed the Sale Motion and sought authority to sell substantially all of the Defendants' assets (the "MEI Assets") to Tatonka for $23.5 million.  The $23.5 million purchase price is proposed to be "paid" in the form of a credit bid, with a small cash amount advanced by Tatonka to fund

463528

payroll, certain wind-down expenses, and the fees and expenses of the Receiver and its professionals (to the extent sufficient funds are not available in the receivership estate to pay such fees and expenses). There is nothing more than a nonbinding letter of intent as of this writing. Once again, the Receiver seeks approval of a transaction the contents of which are barely known.

## ARGUMENT

### A.    Approval of the Proposed Sale is Premature.

The Court cannot reasonably address the benefits of the proposed sale to the Receivership estate or to its stakeholders in the absence of an asset purchase agreement. The Receiver has produced a non-binding letter of intent ("LOI") in which Tatonka offers a credit bid of $23,500,000 for the MEI Assets. But as the Court and parties-in-interest in this case have recently learned through expensive and time-consuming experience, the Receiver's failure to bring a clearly defined binding sale transaction forward renders the approval process premature and wasteful. Moreover, it deprives parties of information necessary to determine their positions. Only once a definitive binding agreement exists that parties have had a reasonable opportunity to assess should the Court consider approval. The Sale Motion should be denied as premature.

463528

**B. Tatonka Cannot Credit Bid to Acquire and Effectively Extinguish Counterclaims Defendants Have Against Tatonka.**

Although the LOI refers to Tatonka's desire to include "all causes of action for pending and potential litigation" among the assets to be acquired, the Sale Motion makes it clear that: "Tatonka will acquire the Defendants' interest in any counter-claims asserted against Tatonka in the instant lawsuit." Sale Motion at p. 6.There is no basis on which to permit Tatonka to acquire those counterclaims – which include (a) failure to dispose of previously obtained collateral in a commercially reasonable manner; (b) misapplication of proceeds of collateral dispositions; (c) tortious interference with Defendants' business relationships and contracts; and (d) wrongful seizure of funds deposited in what Tatonka represented to be a trust account.

1. It is inequitable to permit Tatonka, through credit bid, to effectively foreclose the only avenue available for the benefit of other creditors and shareholders to derive value from their interests in Mosaica and its affiliates.

For no cash consideration, Tatonka and the Receiver propose to extinguish the Defendants' counterclaims. The litigation of these counterclaims will resolve the Defendants' claim that Tatonka has misapplied collateral, engaged in actionable conduct in management of the loan, and overcharged its customer. Moreover, the Defendants contend that Tatonka misappropriated funds escrowed for tax payments, contributing to the demise of the Companies. Only through a full investigation and litigation of these claims will the possibility of value to third

parties on account of their debt and equity claims be realized.  Tatonka cannot, and the Court should not permit, acquisition and extinguishment of these claims for a credit bid.

       2.  <u>A credit bidder cannot acquire commercial tort claims in the manner proposed here.</u>

While credit bidding by a secured party to purchase assets in which it holds a perfected security interest may be permitted in some instances, it is not permissible for a credit bidder to purchase non-collateral assets, and it gives the credit bidder an unfair advantage over parties desiring to pay cash for non-collateral assets.  It is axiomatic that where a "creditor's lien reaches only some of the property to be sold, the creditor cannot credit bid the secured claim for the unencumbered property but must pay cash." 3 *Collier on Bankruptcy* ¶363.09[3]; *see also Quality Props. Asset Mgmt. Co. v. Trump Va. Acquisitions, LLC*, No. 11 Civ. 00053, 2012 WL 3542527, at \*7 n.13 (W.D. Va. Aug. 16, 2012) (a "'credit bid' allows the secured creditor to bid for its collateral using the debt it is owed to offset the purchase price"); *In re Hickey Props., Ltd.*, 181 B.R. 171, 173 (D. Vt. 1995) (concluding that secured creditor could not credit bid at sale of partnership interest because partnership interest was not collateral asset); *In re Pine Coast Enters., Ltd.*, 147 B.R. 30, 31 (Bankr. N.D. Ill. 1992) (holding that a credit bid to acquire collateral and non-collateral assets amounted to bad faith by secured creditor).

463528

In the case at bar, the counterclaims asserted by the Defendants against Tatonka are non-collateral assets, and the Court should not permit Tatonka to credit bid to acquire those assets.  Uniform Commercial Code Section 9-108 (6 *Del. C.* §9-108) provides that a description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of a commercial tort claim.  Even if the Security Agreement between Defendants and Tatonka and the UCC-1 financing statement filed by Tatonka recite that commercial tort claims are included as collateral, that description of collateral is not sufficient.  Commercial tort claims must be specifically identified in order to be pledged as collateral.  Under UCC §9-108(e), a commercial tort claim cannot be described by "type" and instead must be more specifically described.  As a result, a commercial tort claim cannot be covered by an after-acquired property clause.  See Official Comment 5 to UCC §9-108.

Since the counterclaims Defendant asserted against Tatonka are commercial tort claims[1], Tatonka has no perfected security interest in those counterclaims.  It is not legally permissible for a secured party to make a "credit bid" in order to acquire property in which it holds no security interest.

Furthermore, the process by which Tatonka seeks to extinguish the counterclaims without any analysis of the value or legitimacy of those claims and

---

[1] Uniform Commercial Code Section 9-102 (6 *Del. C. 9-102)* provides: "(13) "Commercial tort claim" means a claim arising in tort with respect to which: *(A) the claimant is an organization*; or (B) the claimant is an individual and the claim: (i) arose in the course of the claimant's business or profession; and  (ii) does not include damages arising out of personal injury to or the death of an individual."

463528

prior to any discovery is unfair and inequitable.  A litigant should not be able to obtain the dismissal of claims against it merely by asserting that it has some ill-defined power to purchase those claims for zero dollars.

### C. The Sale to Tatonka Should not be Approved Because it Undermines This Court's Admonition that the Mosaica Business is Run by a Financially Capable Operator.

Although Ms. Hansen's testimony at the May 5 hearing was not exceedingly clear on this point, it appears that Tatonka has immediately due to its lenders millions of dollars in loan repayments and is dependent on its realization of value from Mosaica's assets to meet those obligations.  By becoming the owner of the MEI Assets by credit bid, no cash proceeds of sale will flow to or through Tatonka and be available to repay its debt or provide working capital for operation of the business of charter school management.  Under these circumstances, it appears that Tatonka will not be financially capable of operating the Mosaica business after acquiring the MEI Assets.  A sale to Tatonka will not address this Court's concerns expressed in the Amended Receivership Order (Dkt. 161): "The receiver's paramount duties are to provide appropriate and quality educational services at the schools operated by the Companies and to preserve, protect, and enhance the value of the Companies.  Therefore, the receiver shall do its best to retain the vast majority of the present employees so as to maintain confidence and continuity.  All other duties are subordinate to these primary duties."  Even the abortive sale to Pansophic would have resulted in an owner with sufficient liquidity and experience

463528

to manage charter schools.  But the proposed sale to Tatonka would mean that no financially viable entity would any longer "provide appropriate and quality educational services at the schools operated by the Companies."   Under these circumstances the sale to Tatonka should not be approved.

### D. The Sale to Tatonka Should not be Approved Because Tatonka Has Not Proven the Amount of Its Claim.

Tatonka has only recently (on April 29, 2015) produced an accounting and evidence of its liens (Dkt. 162-1 and Dkt. 163).  The parties have had insufficient time to review Tatonka's documents to determine if Tatonka has valid, perfected first-position liens and if Tatonka's statement of the amounts owing to it are correct or subject to dispute.  Regarding the extent and validity of Tatonka's liens, the Court should note that, in connection with the abortive sale to Pansophic, Tatonka was willing to leave behind cash in acknowledgment that its liens arguably did not extend to all of Defendants' assets.  In Dkt. No. 165, Tatonka states:  "If Tatonka were not perfected in some assets, the value of the assets (in which Tatonka might not be perfected) is less than $1.5 million.  Tatonka is willing to leave $1.5 million of sales proceeds behind as a Carve Out to pay the next in-line creditor, presumably the IRS."

Additionally, and most importantly, the Shareholders have asserted on behalf of Defendants counterclaims against Tatonka.  Accordingly, the amount available to Tatonka with which to credit bid is unknown.  The Court cannot

463528

approve a credit bid sale without comprehension of the credit Tatonka has available to bid.

Furthermore, on April 29, 2015, Tatonka asserted that the total amount due from Mosaica to Tatonka was $22,990,032.26 (Dkt. 162-1).  Now, three weeks later, Tatonka asserts that it has $23,500,000 owing to it that it can use as a credit bid.  Tatonka's claim must be investigated, and Tatonka should not be allowed to credit bid any amount greater than an amount not in dispute.

## E. The MEI Assets Have Realizable Value Beyond the Credit Bid Offered.

Michael Connelly has testified that, if properly marketed, the MEI Assets have value well beyond the Tatonka debt, even as asserted.  Among those assets are notes and accounts receivable valued at approximately $17 million.

Specifically, in February and April of 2014, MEI and others assigned certain notes receivable and accounts receivable to Tatonka (the "Assigned Receivables"). The Assigned Receivables were already claimed by Tatonka as collateral for MEI's indebtedness.  A total of six assignment agreements were executed in favor of Tatonka: Exhibit 266, dated February 11, 2014 and Exhibits 267, 268, 269, 271 and 272 all dated April 11, 2014.  The evidence shows that the account obligors under those Assigned Receivables have paid Tatonka over $1 million over the past twelve months.  The only testimony before the Court regarding the value of the Assigned Receivables is that of Michael Connelly, who testified that the Assigned

463528

Receivables are fairly valued as carried on MEI's books, maintained in conjunction with its audited financial statements.  That value exceeds $17,000,000.

The most significant MEI Assets are the charter school contracts.  As set forth in the earlier Sale Motion and in the LOI with Pansophic, $14 million of Pansophic's proposed  purchase price was allocated toward "MEI business assets and operations."  Although the Pansophic deal proposed to release (and treat as valueless) the Assigned Receivables, this transaction includes them and their $17,000,000 value.  Moreover, real estate worth as much as $10,565,000 is also included in the proposed sale.  Accordingly, the evidence before the Court is that the MEI Assets are worth far more than the $23.5 million proposed to be paid by Tatonka in the form of a credit bid.

463528

For the foregoing reasons and for the reasons stated in the Objection filed by CXA Corporation (Dkt. No. 188) (which Objection is endorsed and adopted by the Shareholders), the Shareholders request that the Court enter an Order denying the Sale Motion.

Respectfully submitted, this 26th day of May, 2015.

LAMBERTH, CIFELLI, ELLIS
& NASON, P.A.

By*: /s/ James C. Cifelli*
    James C. Cifelli
    Georgia Bar No. 125750
    William D. Matthews
    Georgia Bar No. 470865

***Attorneys for Gene Eidelman and Michael Connelly***

    3343 Peachtree Road, NE
    Suite 550, East Tower
    Atlanta, Georgia  30326
    (404) 495-4495
    Fax:  (404) 262-9911

463528

## <u>CERTIFICATION OF COMPLIANCE WITH LR 5.1, ND GA.</u>

Counsel hereby certifies that, pursuant to LR 5.1(D), NDGa, this filing has been prepared in an approved font, namely Times Roman 14.  Counsel hereby certifies that the margins are in compliance with LR 5.1.

This 26th day of May, 2015.

> LAMBERTH, CIFELLI, ELLIS
> & NASON, P.A.
>
> By: _ s/ William D. Matthews _____
>     James C. Cifelli
>     Georgia Bar No. 125750
>     jcifelli@lcsenlaw.com
>     William D. Matthews
>     Georgia Bar No. 470865
>     wdm@lcsenlaw.com
>
> **_Attorneys for Gene Eidelman and Michael Connelly_**
>
> 3343 Peachtree Road, NE, Suite 550
> Atlanta, GA  30326
> Telephone:  404.262-7373
> Facsimile:   404.262-9911

463528

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed the foregoing Motion to Continue Hearing with the Clerk of the Court via the CM/ECF system, which will automatically send notification to the attorneys of record, which constitutes service on those attorneys pursuant to LR 5.1(A)(3), NDGa.

This 26th day of May, 2015

*/s/ William D. Matthews*
William D. Matthews

404539