UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TATONKA CAPITAL CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-cv-03017-TCB |
| MOSAICA EDUCATION, INC., MICHIGAN EDUCATIONAL FACILITIES, LLC, ASI TEXAS, LLC, EFA COMPANY, LLC, LORAIN-LEAVITT PROPERTIES, LLC, WARREN-ELM FACILITIES, LLC, and COLUMBUS MORSE PROPERTIES, LLC, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT**

COME NOW MOSAICA EDUCATION, INC., MICHIGAN EDUCATIONAL FACILITIES, LLC, ASI TEXAS, LLC, EFA COMPANY, LLC, LORAIN-LEAVITT PROPERTIES LLC, WARREN-ELM FACILITIES, LLC, and COLUMBUS-MORSE PROPERTIES, LLC ("Defendants")[1] and file their Response to Plaintiff's Motion to Dismiss Defendants' Counterclaims or, in the Alternative, for More Definite Statement.

---

[1] Gene Eidelman and Michael Connelly, direct or indirect shareholders or interest holders of the Defendants, and former officers of some of the Defendants, filed the Answer and Counterclaims on behalf of the Defendants with the permission of the Court.

464449

On May 3, 2015, Defendants filed their "Answer to Complaint for Breach of Contract and for Appointment of a Receiver and Counterclaims ("Answer and Counterclaims," Dkt. 167) in response to the complaint initiating this action. On May 21, 2015, the Plaintiff filed its Motion to Dismiss Defendants' Counterclaims or, in the Alternative, for More Definite Statement With Incorporated Memorandum of Law (Dkt. 184). Plaintiff asserts: "Borrowers' Counterclaim contains four counts, none of which states a cause of action for which relief can be granted." Plaintiff further asserts "the allegations are so disorganized that Tatonka cannot determine what claims are being brought or what facts are relevant to any particular claim." This assertion is without merit. To provide some organizational structure for Tatonka's benefit, simply stated, Defendants' Counterclaims are primarily concerned with the following actionable conduct: (a) failure to dispose of collateral in a commercially reasonable manner; (b) misapplication of proceeds of collateral dispositions; (c) tortious interference with Defendants' business relationships and contracts; and (d) conversion or wrongful seizure of funds deposited in what Tatonka represented to be a trust account.

### A. Count One.

Count One of Defendants' Counterclaim alleges that Plaintiff breached its duty of good faith and fair dealing. Plaintiff claims that Defendants have not alleged a factual basis for the claim of breach. The Answer and Counterclaims, in its entirety puts Plaintiff on notice of the conduct constituting the breach of duty of

good faith and fair dealing.  Specifically, Counterclaim Counts Two through Four allege facts that give rise to a breach of duty claim.  Moreover, the Second Defense of the Answer and Counterclaims puts Plaintiff on notice of the facts supporting the breach of duty claim.  The Second Defense states: "Plaintiff improperly seeks recovery of an alleged "Outstanding Indebtedness" of $19,061,475.44 (as of August 31, 2014) without reducing the indebtedness for the value of certain notes and accounts receivable assigned to Plaintiff by Defendants in April of 2014.  By such assignment, and by assignment or seizure of cash or other notes and receivables and by obtaining from Defendants powers of attorney over real estate assets, Plaintiff has received or [obtained] assets having a value in excess of the amounts legitimately owed Plaintiff by Defendants."  Additionally, Paragraph 34 of the Answer and Counterclaims states: "In August 2014, Tatonka seized more than $300,000 of MEI's cash deposited in a trust fund sub-account maintained at Vectra Bank for the benefit of Tatonka's clients, including MEI, and that most of the funds seized were owed to the IRS for payroll taxes.  Defendants deny that Tatonka conducted any conversations with MEI about Tatonka's intent to seize those funds and aver that Tatonka specifically represented that it could not and would not attempt to seize any funds deposited in the trust account."

The Third Circuit has observed that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case…." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).  Moreover, in *Erickson v. Pardus*,

551 U.S. 89 (2007), decided shortly after *Twombly*, the Supreme Court reaffirmed that "[s]pecific facts are not necessary" and that notice pleading remains the rule. *Erickson* also described the pleading standard, even after *Twombly*, as "liberal." *Erickson,* 551 U.S. 89, 93 (2007) (purpose of Rule 8 is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). The Seventh Circuit has held: "In other words, the height of the pleading requirement is relative to the circumstances.  We have noted the circumstances (complexity [*Twombly*] and immunity [*Iqbal*]) that raised the bar in the two Supreme Court cases.  This case is not a complex litigation, and the two remaining defendants do not claim any immunity."  *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009)

The Court should reject Plaintiff's assertion that no facts have been alleged to support Defendants' claim of breach of the duty of good faith and fair dealing. These facts adequately support the Count as pled, and may support fraud and conversion claims as further development of the facts occurs.

**B. Count Two.**

Count Two of Defendants' Answer and Counterclaims very specifically raises the issue that Plaintiff has disposed or is disposing of certain collateral in a commercially unreasonable manner.  Plaintiff asserts that damages must be quantified and alleged in connection with such a claim.  Plaintiff wants to take advantage of its failure to credit the face amount of the notes assigned to it or to

take advantage of the fact that it has not yet disposed of all of the notes. Defendants cannot calculate damages until Plaintiff disposes of the notes and accounts receivable. Defendants assert (and pled in Count Two) that the damages include $4.3 million of debt forgiveness to CATA and CPA which should be credited against Defendants' indebtedness to Plaintiff.

Plaintiff further asserts that Count Two commingles two causes of action: one for unreasonable disposition of collateral and one for a declaratory judgment that Tatonka has been paid in full. Again, Defendants assertion is that the damages caused by Plaintiff's unreasonable disposition of collateral will be in an amount sufficient to enable the Court to conclude that Plaintiff has been paid in full.

Plaintiff asserts that the "law of the case" doctrine bars any finding that Tatonka has already been paid in full. For this proposition, Tatonka cites the Court to its Order of May 14, 2015 (Dkt. 179) involving the proceeds of the sale of the Columbus, Ohio property. That Order addressed only one of the notes previously assigned to Tatonka – i.e. the indebtedness from CHATA to Mosaica, which indebtedness was to be reassigned by Tatonka to the receiver and reduced by approximately $4.8 million. The Order did not address any of the other notes previously assigned to Tatonka nor did it address whether all of those notes taken together would render Tatonka paid in full. Furthermore, Tatonka wants the Court to ignore the fact that the Court has, in prior orders, specifically left this issue open. In the Order approving the agreements with CATA and CPA, the Court

NONE

acknowledged that an issue remains as to whether the $4.3 million of debt forgiveness to CATA and CPA should be credited against Defendants' indebtedness to Plaintiff. The Court stated that this issue "will remain for another day if a dispute arises about Tatonka's failure to credit MEI's indebtedness." *See* Order, Docket No. 61, at p. 5.

Finally, Plaintiff asserts that Count Two is not ripe for adjudication because Plaintiff has not yet forgiven some of the notes/accounts assigned to Plaintiff. Interestingly, at a hearing on May 27 regarding Tatonka's credit bid for virtually all of the assets of the receivership estate, counsel for Tatonka represented that the notes/accounts were not part of any proposed sale (i.e. the sale to Tatonka or the side agreement for the sale to Pansophic). However, on June 3, 2015, the Receiver filed the final letter of intent for the side sale to Pansophic (Dkt. 195), and this letter of intent makes it clear that the proposal to forgive the notes/accounts has been resurrected. Specifically, page 2 of the letter of intent includes a provision calling for Tatonka to assign to the Receiver at closing all of the notes and accounts receivable from the "Included Schools and related parties (which had previously been assigned by MEI to Tatonka…)" except for the "CPA/CATA Notes." The letter of intent further indicates that the Receiver will then assign the Included Schools Debt to Pansophic for nominal value. Plaintiff's assertion regarding ripeness, if it ever had merit, should be rejected. By the time the Court rules on Plaintiff's Motion to Dismiss Counterclaims, Tatonka will have disposed

of the collateral in question in a commercially unreasonable manner.  It would make no sense to dismiss Count Two for lack of ripeness only to require that Defendants re-file Count Two following consummation of Plaintiff's actionable give away of the collateral.

### C. Count Three.

Count Three alleges tortious interference with business relationships or contractual relationships.  Plaintiff claims that Count Three fails to provide "basic details" to the extent that "Tatonka cannot know whether it should deny the allegations or plead an affirmative defense.  Tatonka also claims that Defendants fail to plead where Tatonka's allegedly wrongful acts occurred.  Only through discovery will it be determined where Tatonka's agents were when they communicated false statements to members of the press to cause damage to the Defendants.  While Tatonka is headquartered and incorporated in Colorado, Defendants are without knowledge as to whether Tatonka's agents were traveling when they communicated to members of the press.  Count Three includes an allegation that specifically puts Tatonka on notice with regard to when Tatonka's agents made the statements: "More specifically, false statements were published or issued by Plaintiff at or near a time when Defendants were one of the two finalists for the largest charter school contracts that any district had ever awarded (in York, PA), and at a time when Defendants' chief executive officer was making a presentation to the York, PA school board, to disastrous, anticipated, and intended

effect." Tatonka is fully aware of when this presentation occurred and is fully aware of the reports published by the reporters that caused the York customer to reject Defendants' proposal for the charter school contracts. Under these circumstances, Plaintiff's assertion that Count Three is vague is meritless.

### D. Count Four.

Tatonka asserts that Count Four "presents a barrage of confusing, unrelated allegations. Count Four is also unlabeled, and Tatonka, despite its best efforts, has no idea what legal theory for relief is being sought." To the contrary, Count Four alleges very specific facts about breaches by Plaintiff of promises and representations made to Defendants – promises and representations which Defendants reasonable relied upon to their detriment. Thus, Count Four alleges causes of action for misrepresentation.[2] First, Count Four alleges that Plaintiff reneged on a specific promise to permit Defendants to use 75% of the proceeds of a settlement to be paid by Fell.

Second, Count Four alleges that Plaintiff represented that a certain account used by Defendants (at Plaintiff's direction) at Vectra Bank was a trust account from which MEI would instruct Tatonka to make withdrawals. Tatonka represented to MEI that not even Tatonka would be able access the funds in the

---

[2] Count Four admittedly includes one allegation that does not strictly relate to misrepresentation, but it is relevant to the damages caused by the misrepresentation. Specifically, Paragraph 28 states: "Although Tatonka's seizure caused the non-payment of federal payroll taxes, Tatonka represented to Defendants' clients and potential clients, employees, regulatory authorities, current and potential suppliers of funding, strategic partners and other third parties that Defendants were responsible for the non-payment."

464449

Vectra Account without MEI's consent and direction. This representation was false.

Third, Tatonka represented that funds in the account would be used at Defendants' direction. This representation was false. Count Four alleges that Tatonka failed to follow MEI's direction in August of 2014 to pay funds to the IRS and instead Tatonka seized the entire account.

Tatonka's assertion that Count Four should be dismissed as too vague is not well founded.

## Conclusion

For the foregoing reasons, Defendants request that the Court enter an Order denying the Plaintiff's Motion to Dismiss Counterclaims.

Respectfully submitted, this 4th day of June, 2015.

                LAMBERTH, CIFELLI, ELLIS
                &amp; NASON, P.A.

                By: */s/ James C. Cifelli*
                    James C. Cifelli
                    Georgia Bar No. 125750
                    William D. Matthews
                    Georgia Bar No. 470865

                ***Attorneys for Gene Eidelman and Michael Connelly***
                    3343 Peachtree Road, NE
                    Suite 550, East Tower
                    Atlanta, Georgia  30326
                    (404) 495-4495
                    Fax:  (404) 262-9911

464449

**CERTIFICATION OF COMPLIANCE WITH LR 5.1, ND GA.**

Counsel hereby certifies that, pursuant to LR 5.1(D), NDGa, this filing has been prepared in an approved font, namely Times Roman 14. Counsel hereby certifies that the margins are in compliance with LR 5.1.

This 4th day of June, 2015.

                LAMBERTH, CIFELLI, ELLIS
                & NASON, P.A.

                By:  s/ William D. Matthews
                     James C. Cifelli
                     Georgia Bar No. 125750
                     jcifelli@lcsenlaw.com
                     William D. Matthews
                     Georgia Bar No. 470865
                     wdm@lcsenlaw.com

*Attorneys for Gene Eidelman and Michael Connelly*

3343 Peachtree Road, NE, Suite 550
Atlanta, GA  30326
Telephone:  404.262-7373
Facsimile:   404.262-9911

464449

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing Motion to Continue Hearing with the Clerk of the Court via the CM/ECF system, which will automatically send notification to the attorneys of record, which constitutes service on those attorneys pursuant to LR 5.1(A)(3), NDGa.

This 4th day of June, 2015

                                              */s/ William D. Matthews*
                                              William D. Matthews