IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TATONKA CAPITAL CORPORATION, | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NUMBER 1:14-cv-3017-TCB |
| MOSAICA EDUCATION, INC., et al., | |
| Defendants. | |

**O R D E R**

This receivership action comes before the Court on Plaintiff Tatonka Capital Corporation's motion to dismiss Defendants' counterclaims or for a more definite statement [184], as well as a motion for reconsideration filed by Defendants' shareholders [205].

I.  **Factual and Procedural History**

Defendants Mosaica Education, Inc. and certain of its wholly owned subsidiaries are primarily engaged in the business of managing charter schools. In October 2014, the Court granted Plaintiff Tatonka Capital Corporation's motion to appoint a receiver for Defendants. [28].

In April 2015, the Court clarified and amended the prior Order appointing a receiver. [161] (the "Receivership Order"). Among other things, the Receivership Order grants standing to Defendants' shareholders to assert and prosecute claims that may be available to Defendants against Tatonka. [161] at ¶ 1. On May 3, 2015, Connelly and Eidelman (the "Shareholders") answered Tatonka's complaint and asserted counterclaims against Tatonka for, among other things, breach of the duty of good faith and fair dealing and acting unreasonably in its handling and disposition of collateral. [167].

After several months of managing Defendants' affairs, the receiver ultimately came to the conclusion that the best interests of the receivership estate would be served by a sale of substantially all of Defendants' assets. The receiver filed two motions seeking Court approval of such a sale [145, 185]. On June 11, 2015, following a hearing held on May 5 and post-hearing correspondence from the parties, this Court issued its findings of fact and conclusions of law [199] (the "Sale Order") and entered an Order [200] approving a sale substantially consistent with the terms set forth in the second sale

motion. Since those orders were entered, the receiver has engaged in negotiations regarding the sale of Defendants' assets. The Court understands that most of Defendants' assets—excluding some or all of Defendants' real estate holdings—have already been sold and that the remaining real estate assets will be sold following the resolution of some or all of the issues in this litigation.

## II.     Tatonka's Motion to Dismiss Defendants' Counterclaims

Tatonka has moved for dismissal of the counterclaims asserted by the Shareholders on behalf of Defendants for failure to state a claim. Alternatively, it asks the Court to require Defendants to provide a more definite statement of their counterclaims. For the reasons that follow, the Court will grant the motion for a more definite statement.

### A.     Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim or counterclaim is subject to dismissal for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering a party's motion to dismiss under Rule 12(b)(6), the allegations in the pleading must be accepted as true and construed in the light most favorable to the pleader. *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). But the Court need not accept as true "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," nor legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678; *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal

conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and . . . determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### B. Analysis

#### 1. Count One

In count one of their counterclaims, Defendants allege that Tatonka "has breached its duty of good faith and fair dealing with regard to its transactions with Defendants." [167] at countercl. ¶ 5. But they provide no factual averments whatsoever in support of this claim. They simply incorporate their prior allegations regarding jurisdiction and venue, allege that Tatonka breached its duty of good faith and fair dealing, and assert that Tatonka's conduct precludes it from recovery against Defendants.

The Shareholders argue in response to the motion to dismiss that the allegations and denials contained elsewhere in their answer provide sufficient notice to Tatonka of the facts supporting the first counterclaim. *See generally Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1252 n.11 (11th Cir. 2005) (noting that a pleading

must be read "as a whole," specific "placement" of allegations is "unimportant to [the circuit's] review of a district court's order dismissing a complaint under Rule 12(b)," and "a formulaic misstep by counsel is not fatal under the notice pleading standard (where fair notice is all that is required)").

Without question, context is important to a Rule 12(b)(6) analysis of a pleading, but even considering Defendants' counterclaims in light of the remainder of their answer, it is unclear which factual averments they intend to support their cause of action for breach of the duty of good faith and fair dealing, which averments relate only to other counterclaims or affirmative defenses, and which averments are offered only to contradict the allegations in Tatonka's complaint. Thus, as presently drafted, count one of Defendants' counterclaims does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Thus, the Court will require Defendants to provide a more definite statement of this counterclaim.

### 2. Count Two

In count two, however, Defendants have stated a claim for unreasonable disposition of collateral. Contrary to Tatonka's arguments, Defendants have adequately pled the existence of damages; although they do not plead the precise amount of damages, it is clear Defendants contend they have suffered damages in an amount sufficient to offset some or all of any recovery by Tatonka. *See* [167] at countercl. ¶ 16 ("As a result of its improper and commercially unreasonable disposition of collateral, Plaintiff is not entitled to any recovery from Defendants . . . ."). For the same reason, the Court rejects Tatonka's argument that count two commingles a claim for unreasonable disposition of collateral with a request for declaratory relief. Defendants do not seek declaratory relief; they seek an award of damages, albeit an award in an amount less than or equal to any recovery by Tatonka.

Neither does the law of the case rule bar count two of Defendants' counterclaims. The Court has indeed already found that Tatonka was entitled to one hundred percent of the proceeds from the sale of the

Columbus, Ohio property. [179]. That finding was based on certain arguments put forth regarding a single note, and the Court cannot follow Tatonka's logic in arguing that it somehow operates to bar count two of Defendants' counterclaims. If Defendants can prove that Tatonka did not act in a commercially reasonable manner, and if they can prove that they suffered damages from Tatonka's conduct, there is no decision that has been issued in this case to date that would preclude an award of damages to offset—fully or partially—any recovery by Tatonka.

However, Tatonka is correct that count two of Defendants' counterclaims is not ripe for adjudication. It alleges only that the receiver *proposes* to forgive some of the assigned receivables. There is no indication that such forgiveness has taken place. The Shareholders counter by arguing that "[b]y the time the Court rules on Plaintiff's Motion to Dismiss Counterclaims, Tatonka will have disposed of the collateral in a commercially unreasonable manner" and that "[i]t would make no sense" to require them to replead count two "following consummation of Plaintiff's actionable give away of the collateral." [196] at pp.7-8. "A claim is not ripe for adjudication if it rests upon contingent

future events that may not occur as anticipated, or indeed may not occur at all." *Williams v. Martin*, 283 F. Supp. 2d 1286, 1292 (N.D. Ga. 2003) (internal punctuation omitted). If and when Tatonka engages in the conduct alleged in count two, Defendants may resurrect their counterclaim for unreasonable disposition of collateral, but until such conduct occurs, a claim seeking to prevent it is not ripe for adjudication. The Court will therefore dismiss count two of the counterclaims without prejudice.

### 3. Count Three

Like count one, count three must also be repleaded with greater specificity. In count three, Defendants allege that Tatonka "and its agents falsely represented facts and circumstances" about Defendants to various categories of persons or entities, and they allege that the false statements were timed to have a "disastrous, anticipated, and intended effect." [167] at countercl. ¶¶ 18-19. But Defendants do not allege what specific statements were made; by or to whom they were made; when they were made; the manner in which they were false or

misleading; or the business relationships or contracts with which they contend Tatonka interfered.

As presently drafted, count three is nothing more than a generalized allegation that "Plaintiff and its agents" made some false or misleading statements at some strategic time to any of several individuals that somehow rose to the level of tortious interference with unspecified relationships and contracts. And Defendants' response to Tatonka's motion to dismiss offers little more than a blanket assertion that Tatonka knows what it did. [196] at p.8 ("Tatonka is fully aware of when this presentation occurred . . . ."). Defendants must re-plead count three to provide sufficient detail regarding Tatonka's allegedly false or misleading statements and the manner in which they harmed Defendants.

### 4. Count Four

Although some of the facts supporting the first three counts of Defendants' counterclaims are unclear, there is no question what cause of action is being asserted in each of those counts. Count four, however, is a different story.

As with the other counts, count four is not labeled as asserting a specific cause of action. It impermissibly incorporates by reference all the prior allegations of the counterclaims, *see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002), but even considering only the allegations recited in full within that count, it is unclear what legal theory Defendants are attempting to pursue. Those factual allegations appear at various places to relate to a claim for breach of contract or promissory estoppel, *see* [167] at countercl. ¶ 23 (alleging that Tatonka reneged on an agreement); a claim for fraud or misrepresentation, *id.* at countercl. ¶¶ 24 & 28 (alleging certain misrepresentations by Tatonka); and a conversion claim, *id.* at countercl. ¶ 29 (complaining of "Tatonka's wrongful seizure of funds"). Defendants themselves describe count four as asserting more than one cause of action: in response to the motion to dismiss, they characterize it in one place as asserting a claim for "conversion or wrongful seizure of funds," [196] at p.2, and elsewhere as "alleg[ing] causes of action for misrepresentation," *id.* at p.8.

Because count four appears to commingle several different causes of action without satisfying the elements of any single one, the Court will require Defendants to provide a more definite statement with respect to this count as well. *See* FED. R. CIV. P. 10(b) ("each claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count"); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("Where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count . . . and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming . . . .").

## C. Conclusion

In their current form, Defendants' counterclaims do not state a claim upon which relief can be granted and are subject to dismissal under Rule 12(b)(6). Count two is subject to dismissal for lack of ripeness and is therefore dismissed without prejudice. Rather than dismiss counts one, three, and four, however, the Court will give Defendants fourteen days to file an amended pleading that sets forth

more definite statements with respect to these counterclaims. In repleading, Defendants are advised to avoid surplusage, refrain from incorporating by reference irrelevant factual averments in their various counts, and make clear what legal theories they are proceeding under and what factual allegations support each such theory. Tatonka's motion for a more definite statement [184] is granted.

## III. The Shareholders' Motion for Reconsideration

### A. Legal Standard on a Rule 59 Motion for Reconsideration

"The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. But they are common enough in practice. Local Rule 7.2 provides that motions for reconsideration are not to be filed 'as a matter of routine practice,' but only when 'absolutely necessary.'" *Vidinliev v. Carey Int'l, Inc.*, No. 1:07-cv-762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008) (quoting LR 7.2, NDGa). Such motions may be brought pursuant to either Rule 59(e) or Rule 60, depending on the type of relief sought. *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1020 (11th Cir. 1988). In this case, the Shareholders' motion is filed pursuant to Rule 59(e). [205] at p.1.

"The Court's reconsideration of a prior order is an extraordinary remedy." *Taylor Woodrow Constr. Corp. v. Sarasota/Manatee Airport Auth.*, 814 F. Supp. 1072, 1072 (M.D. Fla. 1993); *Flynn v. Terrebonne Parish Sch. Bd.*, 348 F. Supp. 2d 769, 771 (E.D. La. 2004). "The movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Taylor Woodrow Constr.*, 814 F. Supp. at 1072. A Rule 59(e) motion cannot be used "to relitigate old matters [or] raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). Instead, "[a] party may move for reconsideration only when one of the following has occurred: 'an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice.'" *Vidinliev*, 2008 WL 5459335, at *1 (quoting *Godby v. Electrolux Corp.*, Nos. 1:93-cv-353-ODE, 1:93-cv-126-ODE, 1994 WL 470220, at *1 (N.D. Ga. May 25, 1994)); *Flynn*, 348 F. Supp. 2d at 771 (Rule 59(e) motion will be granted only if one of these criteria is satisfied).

14

B. Analysis

The Shareholders' motion seeks reconsideration of four aspects of the Court's Sale Order that they contend to be "erroneous or overbroad." [205] at p.2. First, they take issue with the finding that "[n]either the Receiver nor any of its professionals have acted with gross negligence or bad faith in connection with the Authorized Sales or the administration of the receivership estate." [199] at ¶ 73. The Shareholders argue that this language erroneously grants complete immunity to the receiver for actions that are yet to be taken. But as the receiver correctly points out, that finding is limited to conduct that took place prior to the entry of the Sale Order on June 11, 2015. Nothing in the Sale Order immunizes the receiver or its professionals for any actions taken after the date of the Sale Order, including in connection with closing the authorized sales. The Court therefore declines Plaintiffs' invitation to revise the language of paragraph seventy-three.

There is likewise no reason to modify paragraph thirty-six's recitation of the amount due from Mosaica to Tatonka. The amount stated in paragraph thirty-six—$22,999,855.37—is supported by the

evidence currently in the record. But, as the Shareholders note, the Court has not yet reached the merits of Defendants' counterclaims. The Shareholders fear that paragraph thirty-six "could be argued by Tatonka to have preclusive effect if the finding is not amended to read that it is made 'for the purpose of consideration of the Second Sale Motion only.'" [205] at pp.4-5. The Court finds this to be an untenable construction of paragraph thirty-six; as a result, the Shareholders have pointed to no "clear error" in or "manifest injustice" resulting from this finding, and there is no reason to alter that portion of the Sale Order. *Vidinliev*, 2008 WL 5459335, at *1. The Sale Order correctly states the amount due by Defendants to Tatonka under the various loans and guaranties discussed therein. Nothing in the Sale Order should be construed as foreclosing the possibility that Tatonka's ultimate recovery might be reduced or altogether eliminated if Defendants succeed on their counterclaims.

The Shareholders also take issue with the Court's finding that certain receivables assigned by Defendants to Tatonka in April 2014 "had an aggregate face value of approximately $16.5 million." [199] at

¶ 38. According to the Shareholders, the only testimony before the Court—that of Connelly—supports a finding that the value of those assigned receivables "exceeds $17,000,000." [205] at p.4.

The Shareholders do not, however, object to the finding—also in paragraph thirty-eight of the Sale Order—that "the evidence establishes that these Receivables are not worth their face value, though that they have some undetermined value." [199] at ¶ 38. That finding is well supported by the testimony of, among others, Carol Hansen and Katie Goodman. Ms. Hansen also testified that the face value of those receivables has no relevance. Tr. of May 5, 2015 Hr'g at 34. Thus, even if the Court were to accept the Shareholders' argument that the face value of the assigned receivables is understated in the Sale Order, the Shareholders have not shown any injustice or prejudice resulting from that error. There is therefore no reason to alter or amend that language under Rule 59(e).

Finally, the Sale Order addresses the extent to which those same assigned receivables would be credited to Defendants' indebtedness, providing that "Tatonka must credit the indebtedness due only to the

extent it receives cash payments made on these Receivables." [199] at ¶ 40. The Shareholders point to no new evidence regarding this language, and they do not explain why it was not raised prior to the entry of the Sale Order. *See Michael Linet*, 408 F.3d at 763 (Rule 59(e) motion cannot be used to "raise argument . . . that could have been raised prior to the entry of judgment."). Moreover, in the absence of even an attempt by the Shareholders to show any manifest injustice or clear error in it, the Court sees no reason to alter or amend the language in paragraph forty.

Accordingly, the Shareholders' motion for reconsideration [205] is denied.

## IV. Conclusion

For the foregoing reasons, Tatonka's motion for a more definite statement [184] is granted. Defendants have fourteen days to file an amended statement of their counterclaims against Tatonka. The Shareholders' motion for reconsideration [205] is denied.

IT IS SO ORDERED this 24th day of August, 2015.

_____
Timothy C. Batten, Sr.
United States District Judge